THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. THOMAS MORAN, Appellant.

Crimes — murder in first degree — erroneous charge leaving
case to jury upon single theory of homicide by one engaged in
commission of felony — ruling that if defendant killed a
policeman in an effort to escape after killing another it was
homicide while engaged in commission of felony, error.

1. It was error for the trial judge, upon the trial of an indictment
for murder in the first degree, to send the case to the jury upon the
single theory of a homicide by one engaged in the commission of a
felony (Penal Law, § 1044, subd. 2) where the evidence showed that
defendant and four companions being halted by two policemen,
defendant drew a revolver and fired two shots at one officer and a
third one at the other, killing them both. The killing was not done
in circumstances excluding every possible hypothesis except one of
homicide while engaged in another or independent felony.

2. A ruling that if defendant killed the second officer in an effort
to escape after killing the first, this was homicide while engaged in
the commission of a felony, is erroneous. If defendant was trying to
escape, the first felony was over. The felonious assault on the second
officer that then begun was not independent of the homicide. It was
the homicide itself. (People v. Wagner, 245 N. Y. 143, distinguished.)

(Argued June 8, 1927; decided July 20, 1927.)

APPEAL from a judgment of the Kings County Court,
rendered February 2, 1927, upon a verdict convicting
the defendant of the crime of murder in the first degree.

Peter P. Smith and Dominic B. Griffin for appellant.
The trial court committed reversible error in refusing to
charge that the jury could bring in a verdict of murder
in the second degree or of manslaughter, for the reason
that it was possible in view of the facts in this case to
justify a verdict of murder in the second degree or of
manslaughter in the first degree. (People v. Koerber,
244 N. Y. 147; People v. Schleiman, 197 N. Y. 383;
People v. Van Norman, 231 N. Y. 454; People v. Marwig,
227 N. Y. 382; People v. Marendi, 213 N. Y. 600; People
v. Spohr, 206 N. Y. 516; People v. Hüter, 184 N. Y. 237.)

*Charles J. Dodd, District Attorney (James I. Cuff* and *Henry J. Walsh* of counsel), for respondent. The trial court properly submitted the case to the jury under the provisions of section 1044, subdivision 2, of the Penal Law, as a homicide committed in the perpetration of a felony. (*People* v. *Wagner,* 245 N. Y. 143; *People* v. *Patini,* 208 N. Y. 176; *People* v. *Giblin,* 115 N. Y. 196; *People* v. *Miles,* 143 N. Y. 383.)

Cardozo, Ch. J. On November 19, 1926, the defendant with four companions was riding in a motor car in Brooklyn, New York. Two officers, coming up in a police department car, ordered defendant's car to stop. The driver, LaCurto, obeyed, though the defendant cried to him to go on. The officers, Byrns and Daskiewicz, stepped out of the police car; the defendant and some of his companions out of theirs. At once the defendant drew a revolver, shouting, " Stick them up." He fired two shots at Daskiewicz, who had made a movement as if to draw a weapon. He fired another shot, the third one, at Byrns, who made a jump as if to seize him. This is his narrative. It is also that of Cahill, his companion. Another companion, LaCurto, a witness for the defense, states the order of events differently. According to him, the first shot was fired at Daskiewicz, the second at Byrns, and the third again at Daskiewicz. Both officers died as the result of their wounds. The defendant fled and hid, but surrendered a few days later. Questioned then by the district attorney, he made a full confession, asserting with bravado that he wished to go to the electric chair. He declined to consult with counsel or to follow their advice. Evidence was offered to the effect that he was insane, the victim of delirium induced by epilepsy. Evidence to the contrary was offered by the People. He has been tried and convicted upon the indictment for the murder of Byrns.

The judgment must be reversed because of basic error

[246 N. Y. 100]       Opinion, per CARDOZO, Ch. J.       [July,

in the charge. The trial judge left the case to the jury upon the single theory of a homicide by one engaged in the commission of a felony (Penal Law, § 1044, subd. 2). He confined the jury to a choice between a verdict of acquittal and one of murder in the first degree. He refused to submit the other degrees of homicide. He refused to permit counsel, in summing up the case, to talk about the other degrees. He said that if the defendant after shooting Daskiewicz, shot and killed Byrns in · an effort to escape, this was homicide while engaged in the commission of a felony, and so murder in the first degree irrespective of intent. The jury were not to consider whether the defendant had fired with a deliberate and premeditated design to kill. Enough that Daskiewicz had been shot, and that the defendant was escaping.

Repeated decisions of this court bear witness to the fact that such is not the law (*People* v. *Hüter*, 184 N. Y. 237; *People* v. *Schleiman*, 197 N. Y. 383; *People* v. *Spohr*, 206 N. Y. 516; *People* v. *Van Norman*, 231 N. Y. 454; *People* v. *Koerber*, 244 N. Y. 147, 150; *People* v. *Wagner*, 245 N. Y. 143, 148, 149). Homicide is murder in the first degree when perpetrated with a deliberate and premeditated design to kill, or, without such design, while engaged in the commission of a felony. To make the quality of the intent indifferent, it is not enough to show that the homicide was felonious, or that there was a felonious assault which culminated in homicide (*People* v. *Hüter, supra*). Such a holding would mean that every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential (*People* v. *Wagner, supra*, at p. 148). The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, *e. g.*, robbery or larceny or burglary or rape. Cases are found at times where the inculpatory facts are susceptible of one interpretation

only: either the one accused was engaged in an independent felony at the time of the killing, or he did not kill at all. In such conditions the law does not say that other forms or grades of homicide shall be submitted to the jury (*People* v. *Schleiman, supra*). If, however, the facts are susceptible of varying interpretations, there must be a submission of whatever forms and grade comport with the proofs and the indictment (*People* v. *Van Norman, supra; People* v. *Koerber, supra*). The statute is explicit. " Upon the trial of an indictment, the prisoner may be convicted of the crime charged therein, or of a lesser degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a lesser degree of the same crime " (Penal Law, § 610; cf. Code Crim. Pro. § 444). Whenever intent becomes material, its quality or persistence — the deranging influence of fear or sudden impulse or feebleness of mind or will — is matter for the jury if such emotions or disabilities can conceivably have affected the thought or purpose of the actor.

This killing was not done in circumstances excluding every possible hypothesis except one of homicide while engaged in another or independent felony. The trial judge told the jury that the defendant was engaged in such a felony if before he had been placed in the lawful custody of an officer, he shot Officer Byrns in an effort to escape. We have held exactly to the contrary (*People* v. *Hüter, supra; People* v. *Van Norman, supra; People* v. *Marendi*, 213 N. Y. 600, 606; *People* v. *Marwig*, 227 N. Y. 382, 386). The very meaning of flight is desistance or abandonment, unless, indeed, in special circumstances as in cases where a thief is fleeing with his loot. If the defendant was trying to escape, then the first felony, the assault upon Daskiewicz, was over. A second felony had begun, a felonious assault on Byrns. The felony then begun was not independent of the homicide. It was the homicide itself.

We are told that Byrns grappled with the defendant to save a brother officer from the threat of fresh attack, or that so a jury might determine. Reference is then made to *People* v. *Wagner* (*supra*) as authority for a holding that a struggle thus begun is one connected with another felony so that intent is unimportant. In all this, there is a futile attempt to split into unrelated parts an indivisible transaction. The attack upon Daskiewicz was not separate and distinct in motive or origin from the one upon Byrns. The summons by the defendant to surrender was aimed equally at each, and so was the threat of the revolver which he drew from his pocket to emphasize his words. At that very moment there began a felonious assault directed against both, against one as plainly as the other (Penal Law, § 240, subd. 1). Byrns did not plunge into a fight to which he had hitherto been a stranger, intent upon rescue and nothing else. He was in the fight from the beginning, a sharer of its perils from the moment the assault began (cf. *People* v. *Spohr, supra*). We can only guess at the motive with which he grappled with his assailant, and a jury could do no more. The testimony for the People is that Daskiewicz at that stage of the affray had already been shot twice. There is nothing in such evidence to show that another shot at him was planned or that Byrns so supposed. The inference is just as reasonable that Byrns was trying to defend his own life, or to foil an escape by arresting the assailant. Indeed there seems to have been no thought upon the trial that his motive, whether rescue or something else, would affect the nature of the crime. The jurors were never asked to say whether he had joined in the struggle with one motive or another. They were told on the contrary that a shot to escape after an attack upon another was a shot by one engaged in the commission of a felony.

Applied to such facts, our ruling in *People* v. *Wagner* (*supra*), recently decided, is far from an authority to

sustain the People's judgment.  Wagner was engaged in an assault upon a woman when Basto, another occupant of the same house, came to the woman's rescue, and in the ensuing fight was killed.  We held that the trial judge did not err in permitting the jury to say that the homicide was by one engaged in a separate or independent felony, the assault upon the woman.  The other grades of homicide were charged.  The jury were not told that the evidence was susceptible of one interpretation and no other.  The case was put to them in all its phases, with instructions appropriate to each.  There is little need to elaborate distinctions.  They appear upon the surface.  Basto, a stranger to the fight, plunged into it while it was yet in progress, to stay the commission of a felony upon the person of another.

This court has given warning more than once that the conditions justifying submission of the " felony " grade of homicide to the exclusion of all others must be understood to be " exceptional " (*People* v. *Schlieman, supra*).  Such a submission is proper only where there is " no possible view of the facts which would justify any other verdict except a conviction of the crime charged or an acquittal " (*People* v. *Schleiman, supra; People* v. *Van Norman, supra; People* v. *Koerber, supra*).  Apparently the warning has need to be repeated.  Evidence uncertain in its implications must not be warped or strained to force a jury into the dilemma of choosing between death and freedom.  We do not say that this jury, with choice unconstrained, would have chosen otherwise than it did.  There was ample evidence to justify a verdict of deliberate and premeditated murder if that issue had been submitted.  It never was.  The reason it never was is that the jurors must then have been informed of the range and measure of their power.  We may not " sustain a conviction erroneously secured on one theory on the conjecture that it would have followed just the same if the correct theory had been applied " (HISCOCK, Ch. J.,

in *People* v. *Smith*, 232 N. Y. 239, 244). A criminal, however shocking his crime, is not to answer for it with forfeiture of life or liberty till tried and convicted in conformity with law (*People* v. *Sobieskoda*, 235 N. Y. 411, 420; *People* v. *Pettanza*, 207 N. Y. 560, 567).

The judgment of conviction should be reversed and a new trial ordered.

Pound, Crane, Andrews, Lehman, Kellogg and O'Brien, JJ., concur.

Judgment reversed, etc.