THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. HENRY H. STEVENS and CHARLES A. WATERBURY,
Appellants.

(Argued November 23, 1936; decided December 31, 1936.)

*Charles J. Yorkey* and *Richard P. Byrne* for Henry H.
Stevens, appellant.

*Joseph T. McCaffrey, Crandall Melvin* and *Thomas F. Zaia* for Charles A. Waterbury, appellant.

*Harry M. Stacy, District Attorney* (*Clarence J. Gorman* of counsel), for respondent.

FINCH, J. The evidence establishes without dispute that the defendants made preparation to rob the National Bank of Lacona in broad daylight. Pursuant to this plan these two defendants entered the bank during the noon hour. At that time the decedent, Charles M. Salisbury, the chairman of the board of directors, was seated at a desk in one corner of the bank. One defendant had a thirty-two-calibre revolver and the other a twenty-five-calibre automatic pistol. At the point of these loaded guns they ordered the bank teller and the bank clerk to proceed to the corner of Salisbury's desk. When Salisbury arose the defendants ordered him back but he was slightly deaf and either did not hear or was sufficiently brave not to acquiesce. The defendants both shot at Salisbury, the bullet from the gun of one defendant entered his thigh and the bullet from the other passed through his heart. After the defendants were arrested they made full confessions.

The defense of the defendant Waterbury was that he was insane and the defense of the defendant Stevens that he acted under the coercion of Waterbury. Waterbury did not take the stand as a witness. Both defenses as well as that of abandonment were duly submitted to the jury and duly rejected by them and the evidence sustained the findings of the jury.

Upon the request of the District Attorney the court submitted the case to the jury on a felony murder count only and charged that it must find the defendants guilty of murder in the first degree or acquit them. It is argued that this constitutes error which requires us to reverse the conviction. It is true that where there is evidence from which the jury could find that the defendants are guilty of a lesser crime, the jury must not be left with the alternative of convicting of murder in the first degree or acquittal. On the other hand, in a felony murder case where the facts are susceptible of one interpretation only, the defendants are guilty of murder in the first degree

or they are not guilty at all and the court may properly refuse to charge a lesser degree of homicide. (*People* v. *Schleiman*, 197 N. Y. 383; *People* v. *Kropowitz*, 271 N. Y. 505; cf. *People* v. *Koerber*, 244 N. Y. 147.) The only possible ground upon which it may be argued that this latter rule does not apply in the case at bar is that both defendants claim abandonment and Stevens claims coercion and Waterbury pleads insanity. According to the defendants' own story they had not even retreated when they shot at the deceased. That each shot the deceased is not denied nor is it denied that they were engaged in the commission of a felony. In fact they have each so confessed. Upon sufficient evidence the jury has found against them upon every question involved. In the circumstances of this case I can find no reasonable basis for setting aside the verdict of the jury.

The judgments of conviction should be affirmed.

LEHMAN, J. (dissenting). The defendants have been convicted of murder in the first degree. The evidence establishes without dispute that the defendant Waterbury conceived the idea of robbing the National Bank of Lacona in the village of Lacona in Oswego couty. He communicated his idea or plan to the defendant Stevens, and by persuasion, or, as Stevens claims, by coercion, enlisted his co-operation. After preparations for the proposed robbery had been completed, the two defendants proceeded together to the bank building. They entered it during the noon hour. At that time Mr. Charles M. Salisbury, the chairman of the board of directors, was seated at a desk in one corner of the bank. The bank teller and a bank clerk were also in the bank. One defendant had a thirty-two-calibre revolver and the other a twenty-five-calibre automatic pistol. At the point of these guns they ordered the bank teller and the bank clerk to proceed to the corner near Salisbury's desk. When Salisbury arose the defendants ordered him to move back also. He was seventy-nine years old and

slightly deaf. He disregarded the defendants' order or, perhaps, did not hear it. Both defendants shot at Salisbury. A thirty-two-calibre bullet entered his thigh. A twenty-five-calibre bullet passed through Mr. Salisbury's heart and caused his death. All this the defendants admitted in confessions made after their arrest. Beyond question it establishes *prima facie* that the defendants killed Mr. Salisbury during an attempted robbery.

To meet this evidence the defendant Stevens testified that in joining in the proposed robbery he acted solely under coercion exercised upon him by the defendant Waterbury. Waterbury did not take the stand as a witness, but evidence was produced in his behalf intended to show that he was insane. The evidence on neither point was, perhaps, very persuasive though sufficient to raise questions of fact for the jury to pass upon. Stressing some details in the testimony, otherwise without significance, as to what was said by the defendants, or one of them, before the shooting, the defendants' counsel urged that there was also a question of fact as to whether the killing occurred during the commission of the attempted robbery or whether, on the other hand the robbery had been abandoned before the killing.

The indictment contains two counts. The first count charges in common law form that the defendants killed Charles M. Salisbury " with force and arms, feloniously, willfully, and of their * * * malice aforethought, and with a deliberate and premeditated design of them and each of them * * * to effect the death of him, the said Charles M. Salisbury." The second count charges that the defendants killed Charles M. Salisbury while " engaged in the commission of a Felony, to wit: the crime of an Attempt to Commit the Crime of Robbery in the First Degree." It alleges, incidentally, that the defendants acted " feloniously, willfully, and with * * * malice aforethought, and with a deliberate and premeditated design."

Before the trial the defendants moved for an order to compel the District Attorney to elect under which count the prosecution would proceed. The motion was denied on the ground that it was premature. It was not renewed by the defendants at the trial, but at the close of the evidence the trial judge, over objection and exception by the defendants' counsel, granted a motion made by the District Attorney to go to the jury only upon the second or felony count.

The trial judge thereafter instructed the jury that the charge against the defendants was the killing of Charles M. Salisbury in the commission of a felony " pursuant to their common plan or design " and that " the crime so charged * * * is murder in the first degree." He told the jury that the defendant Stevens claimed " that he had reasonable apprehension that he was to be killed by the defendant Waterbury, and he excused himself by the fear of duress," and the judge further instructed the jury that " if you find under the evidence that he [Stevens] was compelled to do the things which he did do, and that he had reasonable apprehension on his part that he was liable to be killed or receive grievous bodily injury in case he refused, then in that case he is excusable." The trial judge then explained to the jury the nature of the defendant Waterbury's claim of insanity and that if he was laboring under such a defect of reason as not to know the nature and quality of his act or not to know that it was wrong, the jury might acquit him.

In his main charge the trial judge made no reference to any possible claim that the defendants had abandoned the attempted robbery before they shot Mr. Salisbury, and it may be doubted whether there is any evidence upon which such claim could reasonably be based, but at the defendants' request the trial judge did thereafter charge the jury " that if they find from all of the evidence that at the time of the firing of the fatal shot which mortally wounded Mr. Salisbury, the defendants, Stevens and Waterbury, had abandoned the attempt of robbery,

had abandoned the idea of loot, and were running away and were escaping, or seeking to run away or escape, this doctrine of felony murder heretofore charged in this case has no application, and the jury is instructed to disregard it and their verdict with respect to both defendants must be not guilty." The verdict of the jury finding the defendants guilty of murder in the first degree imports that the jury rejected the defenses of coercion and insanity and the defendants' claim of abandonment of the attempted robbery, and found that at the time the fatal shot was fired, both the defendants were engaged in a concerted attempt at robbery. The evidence sustains the findings of the jury.

Section 610 of the Penal Law provides: "Upon the trial of an indictment, the prisoner may be convicted of the crime charged therein, or of a lesser degree of the same crime." The indictment, in both counts, charged the prisoners with the crime of murder. in the first degree. In spite of the mandate of the statute the trial judge refused the request of the defendants' counsel that upon the trial of the indictment the jury might convict the defendants of a lesser degree of homicide. The only charge submitted to the jury was the charge of felony murder in the second count of the indictment and the trial judge stated that there were no " lesser degrees " of felony homicide. In refusing the request of counsel that the jury be instructed that " if from all of the evidence they find the defendants or either of them are guilty of homicide in some degree, but they have a reasonable doubt as to which one or more degrees either one or both are guilty of, then they may find them guilty of the lowest of those degrees only," the court said: " that would be true under common law."

The jury retired at seven-twenty P. M. to commence their deliberations. The evidence established beyond dispute that the two prisoners had come to the bank, prepared to rob it, and that while in the bank they had killed an aged officer of the bank. Upon that evidence

the jury might well be reluctant to bring in a verdict of not guilty which would allow the prisoners to go free and unwhipt of justice, but even though the jury might well reject the claim of one prisoner that he was coerced and the claim of the other that he was insane, the jury might still find, in the youth of the one and the testimony of variation from the usual and normal in the conduct of the other, ground for reluctance to convict of murder in the first degree with its consequent penalty of death. That the jurors were reluctant to acquit or to convict of murder in the first degree appears plainly in this case, for at eleven-two P. M., almost four hours after they had left the court room, they stated to the court that " the jury would like to know, if found guilty can a verdict other than murder in the first degree be entertained." To this the court replied " not under the charge here, not under the indictment upon which these defendants are tried. They are tried on what we call a felony indictment. As I charged the jury today, if you find under the rules and instructions which I gave you that these defendants intended to commit the crime of robbery of the bank on the 7th day of May, and in carrying out that attempt they killed a human being, you may find them guilty of murder in the first degree; otherwise you find them not guilty under the rules which I gave you."

The administration of justice is not so tightly bound by legalistic formulas that the life or death of an accused may be made dependent upon the manner in which a charge is formulated in the indictment. Certainly the probative value and the effect of evidence presented to the jury cannot be changed by the form of an indictment or by choice of a District Attorney to have the case submitted to the jury under one count of an indictment rather than another.

In *People* v. *Schleiman* (197 N. Y. 383) this court said that " where the indictment charges murder in the first degree in the common-law form only or murder in the first degree committed from a deliberate and premedi-

tated design to effect death and the defendant is tried upon that charge, he is entitled, if he so requests, to have the jury instructed that it is within their power to find a verdict for a lesser degree of felonious homicide. Upon a murder trial such instruction may properly be refused only where the evidence is directed toward the establishment of a kind of murder in which the intent to kill is immaterial. Such was the case here. No attempt at all was made to prove the second count of the indictment which was in the common-law form " (p. 389). Torn from their context, these words might seem to indicate that perhaps the form of the indictment and the election of a District Attorney to proceed under one count of an indictment for murder in the first degree rather than under another count, may determine whether the prisoner may be convicted of a lesser degree of homicide or must be acquitted unless it is proven beyond a reasonable doubt to the satisfaction of the jury that the prisoner while engaged in the commission of a felony killed a human being and was, therefore, guilty of murder in the first degree. The opinion read as a whole, however, shows that the decision was based upon the fact that there was no *evidence* to sustain a finding that the defendant was a guilty participant in a homicide unless the killing occurred as charged during the commission of a felony in which the defendant did participate. The final words of the opinion point this out clearly. " The conditions are exceptional, however, which warrant a refusal to instruct the jury as to their power to convict of a lower degree of the crime charged for which the defendant is upon trial and great care should be observed, as was done here, not to withhold such instruction unless the case is one like that before us, *where there was no possible view of the facts* which would justify any other verdict except a conviction of the *crime charged* or an acquittal " (p. 390). (Italics not in original.)

If there ever was room for difference of opinion as to the scope of the decision in that case, it has been removed

by what the court has both said and decided in subsequent cases. So in *People* v. *Moran* (246 N. Y. 100, 105) we said: " this court has given warning more than once that the conditions justifying submission of the ' felony ' grade of homicide to the exclusion of all others must be understood to be ' exceptional.' (*People* v. *Schleiman, supra.*) Such a submission is proper only where there is ' no possible view of the facts which would justify any other verdict except a conviction of the crime charged or an acquittal.' (*People* v. *Schleiman, supra; People* v. *Van Norman, supra; People* v. *Koerber, supra.*) Apparently the warning has need to be repeated." Again, in *People* v. *Seiler* (246 N. Y. 262, 267), though we held that, because of exceptional circumstances, the requested instruction as to degrees of crime was properly refused, we pointed out that in *People* v. *Schleiman* (*supra*) " this court did not base distinction on technical form of indictment or on other ground than that the court may confine its instruction to the jury to those degrees of the crime charged in the indictment, of which, *under the evidence*, the jury might find the defendant guilty. However strong the evidence of deliberate and premeditated design may be, the jury alone has power to find that fact and may refuse to find it. It may refuse to find even intent to effect death and then there can be a conviction only of manslaughter. In some cases the court may deem refusal by the jury to find a higher degree of crime unreasonable, yet a verdict of guilty of lesser degree is within the power of the jury if based on evidence which establishes at least all the elements of the crime of lesser degree. The case is logically different where a verdict of guilty of a lesser degree of the crime charged depends not merely upon the failure of the jury to find some element of crime which in the opinion of the court has been clearly proven, but upon an affirmative finding of fact which is not sufficiently supported by the evidence."

In that case the evidence showed that one Masterson was killed by a person engaged in an attempted robbery,

but the fatal shot was not fired by the defendant, and as we there said, unless the defendant was a guilty participant in the attempted robbery " no evidence here presented would justify an affirmative finding which * * * would make the defendant share in the guilt of the slayer " (p. 268). That was the situation also in *People* v. *Chapman* (224 N. Y. 463, 479), in which this court approved a refusal to charge the degrees of crime because " there was no possible view of the evidence which would have justified any verdict other than a conviction for murder in the first degree or an acquittal." (Cf. *People* v. *Scarnici*, 266 N. Y. 401.)

That is not the case here. The testimony of the bank teller and the bank clerk, if believed, leads to the conclusion that Stevens held the twenty-five-calibre automatic pistol and fired the fatal bullet; on that point their testimony is contradicted by the confessions of the defendants who agree that Waterbury held the pistol from which the fatal bullet was shot, while the bullet from the revolver held by Stevens inflicted only a flesh wound. Thus the jury, even though it had chosen to reject or disregard completely the testimony which showed a concerted attempt at robbery or had found that the attempt was abandoned before the shooting, might still have convicted either Stevens or Waterbury of murder in the first or second degree on a finding that he actually shot the deceased with a design to effect his death, or might have found both guilty of some degree of felonious homicide, since both fired at the deceased simultaneously under circumstances which would lead fairly to the inference that they were shooting in concert even if they had not previously concerted a plan to rob. (Cf. *People* v. *Walsh*, 262 N. Y. 140.)

In *People* v. *Koerber* (244 N. Y. 147) this court held that the denial of a request by an accused charged with felony murder that the court instruct the jury upon the degrees of homicide and the rule of reasonable doubt as applied to lower degrees of crime presents reversible

error if the accused had produced evidence of intoxication which raised a question as to whether the mind of the defendant was so obscured by drink that he was incapable of forming the specific intent which is an element in the underlying felony. In that case we said that " the fact that the accused did not have the intent to rob would not mean that acquittal should follow. It is conceivable, for example, that a youth whose mind was befuddled by drink might intend merely to stage a hold-up and yet be guilty of some degree of homicide. He might be so frightened by resistance as to shoot in the heat of passion, the emotion of fright, and thus be guilty of manslaughter in the first degree, or conceivably even of murder in the second degree " (p. 154). We reversed in that case, though we added that " we may doubt whether the evidence of intoxication adduced by this defendant would carry sufficient weight with an intelligent jury to affect its verdict " (p. 155).

Upon what ground can that case be distinguished from this? In both cases a defendant charged with homicide during the commission of a felony produced evidence which raised question as to whether the accused was a guilty participant in the felony. If a person with mind too befuddled with drink to form an intent to commit a robbery may still be guilty of some degree of homicide, then surely a defendant who was coerced into apparent participation in the robbery may also be guilty of some degree of homicide. Indeed, in this case, even if the jury had believed that the defendant Stevens joined in the attempted robbery because of coercion, an intelligent jury could hardly have doubted that when Stevens shot, he did so because of excitement or desire to escape, or other motive than coercion. Surely if the District Attorney had believed that the jury might accept the testimony of coercion, he would have had the right to a charge that acquittal would not follow but that the jury might find guilt of murder in the second degree or of manslaughter.

If the District Attorney would have been entitled to such a charge, how can it be said that Stevens was not entitled to the same charge if he so requested?

If the trial judge properly submitted to the jury a question as to abandonment of the attempt to rob before Salisbury was shot, then all that I have said obviously applies to both defendants. Surely even if the defendants had abandoned the concerted attempt at robbery before the killing occurred, they should not escape punishment for the killing itself. In many cases we have held that where abandonment of the felony is shown, the jury may still find guilt of any other degree of homicide justified by the evidence.

I have said that in this case it may well be doubted whether there is any evidence of abandonment, and I shall assume that the trial judge erred in favor of the defendants when he charged the jury that there was such evidence. None the less, the court could, of course, not charge the jury as matter of law that the jury must find that the defendants killed the deceased while engaged in an attempted robbery, even if the evidence to prove that were conclusive and unchallenged. As we said in *People* v. *Seiler* (*supra*), however strong the evidence may be, " the jury alone has power to find that fact and may refuse to find it." Then the rule stated in *People* v. *Schleiman* (*supra*), in *People* v. *Moran* (*supra*), in *People* v. *Walsh* (*supra*) must be applied, as it has been applied in numerous other cases. That rule is that where a jury even unreasonably rejects evidence presented to establish a charge of felony murder, the jury may convict of any lesser degree of homicide which is established by the evidence and, in accordance with that rule, then the jury should have been instructed that if they do not find that the defendants were engaged in the commission of a felony when they killed Mr. Salisbury, the defendants might still be convicted of some degree of homicide based upon the evidence that in concert they both shot Mr. Salisbury and one of them killed him.

It may be said, of course, that the jury did not reject or disregard the evidence showing a concerted attempt at robbery, and did find that the attempt was *not* abandoned and that Stevens was not coerced into becoming a participant in the attempt. From this it would seem to follow logically that the defendants were not prejudiced by failure of the court to charge that, if the jury did not so find, they might convict of a lower degree of crime; indeed it might seem that a charge that if they do not find that the defendant is guilty of those acts which constitute murder in the first degree they should acquit, is more favorable to the defendant than a charge that in such case they should find guilt of a lesser degree of homicide. The same argument could have been made in every case where this court has held that the trial judge *must* upon the request of a defendant charge in accordance with section 610 of the Penal Law that the jury might convict of a lesser degree of crime. Back of such argument lies the assumption that a finding or verdict of a jury is based solely upon unimpassioned appraisal of the evidence by men who are firmly guided by cold reason. The argument has been invariably rejected by this court because that assumption ignores the fact that jurors are subject to the same human frailties, the same fears and passions and predilections and prejudices as the average man. Here, indeed, the jury asked whether there might be conviction of a lower degree of homicide, and indicated that if its power extended so far, it would exercise it. A jury should not be forced " into the dilemma of choosing between death and freedom " where there is evidence which would support a finding of guilt of homicide in a degree less than murder in the first degree. (*People* v. *Moran, supra.*) As we said in *People* v. *Koerber* (*supra*): " We cannot say that, with proper instructions, ' but one decision and that adverse to the defendant could reasonably have been reached.' When the alternative presented was conviction of murder in

the first degree or acquittal, a conscientious jury would scarcely bring itself to a verdict of not guilty in this case. If they had been instructed that other verdicts were permissible, they might or might not have found the defendant guilty of a lesser degree of felonious homicide " (p. 155). I do not see how we can expect the trial courts or district attorneys to heed our warning that the cases are exceptional in which a trial judge may refuse a request to charge the lesser degree of homicide, if we ourselves disregard the warning. That is why I have quoted so freely from other opinions of this court.

There is no basis in reason or authority for the statement in the prevailing opinion that " the only possible ground upon which it may be argued " that the court erred in its refusal to charge a lesser degree of homicide is that " both defendants claim abandonment and Stevens claims coercion and Waterbury pleads insanity." The uncontrovertible ground is that the defendants had been charged with murder in the first degree, that the statute provides that upon the trial of an indictment for murder in the first degree the prisoner may be convicted of any lesser degree of homicide where the evidence would sustain a finding of every element of the crime of which the defendant is convicted. No one can dispute here that if the jury chose, even arbitrarily, to reject the evidence of the commission of a felony, the evidence would justify a conviction of murder in the second degree or even manslaughter.

I do not understand the statement in the prevailing opinion that it is not denied that the defendants were engaged in the commission of a felony. True they confessed to that before the trial, but at the trial an issue was presented as to whether they were engaged in the commission of a felony and that issue was presented to the jury. I assume that my associates would concede that the defendants could not have been convicted of murder in the first degree unless the jury had found against the

defendants upon that point. Surely the power of a jury to find a lesser degree of homicide upon a trial of a charge of murder in the first degree, cannot depend upon the force of the evidence intended to prove the higher degree of crime or even upon denial of guilt of the higher degree. In all cases the jury and not the court passes upon the degree of guilt of a defendant and upon a trial the court must charge degrees of crime where the facts are susceptible of an interpretation which would include every element of such degrees.

The mandatory death penalty, upon conviction of murder in the first degree, has, I think, survived only because a jury has, under the statute, as at common law, power to find a lesser degree of guilt even in cases where no reasonable person could doubt that the defendant has committed acts which the statute defines as murder in the first degree.

Without change of the statute and without citation of any case in this jurisdiction or elsewhere, as authority, and solely because they believe that the jury could not reasonably reject the evidence that the homicide occurred in the commission of a felony, my associates now deny this power to the jury.

The judgment should be reversed and a new trial ordered.

O'BRIEN, HUBBS and LOUGHRAN, JJ., concur with FINCH, J.; CRANE, Ch. J., votes to affirm as to the defendant Waterbury, and concurs in the result of the opinion of FINCH, J., as to said defendant, but dissents and votes for reversal as to the defendant Stevens; LEHMAN, J., dissents in opinion in which CROUCH, J., concurs. LEHMAN and CROUCH, JJ., vote to reverse and order a new trial as to both defendants.

Judgments of conviction affirmed.