**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**LEMY VERGILE, Defendant**

Criminal No. ST-08-CR-47

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

November 13, 2008

127

JESSE M. BETHEL, JR., ESQ., JUDY M. GOMEZ, ESQ., Assistant Attorneys General, Department of Justice, St. Thomas, USVI, *For Plaintiff.*

JULIE SMITH TODMAN, ESQ., St. Thomas, USVI, *For Defendant.*

CARROLL, *Judge*

## MEMORANDUM OPINION

(November 13, 2008)

THIS MATTER is before the Court on Defendant Lemy Vergile's Motion for Acquittal, pursuant to Federal Rule of Criminal Procedure 29(c). Defendant seeks an acquittal of Counts III and IV of the Information. Because the doctrine of merger prevents the People from using assault third degree as the predicate felony for the conviction of murder first degree (felony murder) under the facts of this case, the Court will grant the Defendant's motion for acquittal.

## STATEMENT OF FACTS

Defendant Lemy Vergile ("Vergile") was tried on nine separate counts stemming from the January 28, 2008 murder of Paulette Joseph ("Joseph"). The facts adduced at trial revealed that Vergile drove Joseph to a secluded section of St. Thomas in Estate Frenchman's Bay. Vergile poured acid on Joseph and then bludgeoned her to death with a large stone. Witnesses telephoned the police, and Vergile was later found by law enforcement in the Estate Thomas area of St. Thomas. Upon searching his automobile, a firearm was found by the police. A search of police records in the districts of St. Thomas and St. John and St. Croix showed that Vergile did not have a license to possess a firearm. As a result of these events, Vergile was arrested and charged in an Information filed on February 6, 2008 with one count of murder first degree (premeditated)

(Count I) (hereinafter "premeditated murder"); one count of murder first degree (felony murder) (Count III) (hereinafter "felony murder"); one count of second degree assault (count V); one count of third degree assault (Count VII); four counts of using a dangerous weapon during the commission of a crime of violence (Counts II, IV, VI and VIII); and one count of unauthorized possession of a firearm (Count IX).

After a three-day jury trial, which ended on July 11, 2008, Vergile was found guilty of murder in the second degree, which had been submitted to the jury as the lesser-included offense of premeditated murder Count I; not guilty of Count II, using a dangerous weapon during the commission of a premeditated murder; guilty of Count III, felony murder; guilty of Count IV, using a dangerous weapon during the commission of a felony murder; guilty of Count V, assault in the second degree; guilty of Count VI, using a dangerous weapon during the commission of an assault second degree; guilty of Count VII, assault in the third degree; guilty of Count VIII, using a dangerous weapon during the commission of an assault in the third degree; and not guilty of Count IX, unauthorized possession of a firearm.

On August 8, 2008, Defendant filed a Motion for Acquittal on Counts III and IV, and arguing that these guilty verdicts were duplicative of the guilty verdict on Count I of the lesser-included offense of murder in the second degree. The People filed a response to the Defendant's motion on August 28, 2008 and the Defendant filed a reply on September 12, 2008. This Court considered these arguments at a status conference on September 17, 2008 and invited the parties to brief the question of whether the Defendant could be found guilty of felony murder when the underlying felony was assault third degree. The People filed a supplemental memorandum on October 1, 2008, and the Defendant filed a supplemental memorandum on October 7, 2008.

## DISCUSSION

### I. Introduction

This case presents an opportunity to examine the reach of the Virgin Islands' felony murder statute, codified at V.I. CODE ANN. tit. 14, §§ 921, 922(a)(2) (1996 & Supp. 2008). Vergile attacks the conviction for felony murder by utilizing two distinct theories. He argues first that he should be acquitted of the charges of felony murder and using a deadly weapon

during the commission of a felony murder, since each of these charges is the same offense as murder second degree for which Vergile was convicted under Count I. In response, the People contend that the Virgin Islands Legislature intended to expand the reach of the felony murder statute, and they argue that punishing Vergile for the two convictions would be a proper execution of legislative intent. Vergile also argues that the doctrine of merger precludes his conviction for felony murder as to Counts III and IV under the facts of this case. In contrast, the People argue that the Legislature intended assault to be a predicate felony for the purposes of the felony murder statute, and placed no limit on its application.

The Court agrees with the Defendant in this case that murder second degree and felony murder are the same offense from a constitutional standpoint and that imposing successive sentences upon Vergile for both crimes could be a violation of the double jeopardy clause if the legislature did not intend separate punishments for these two offenses. The Court does not agree that murder second degree and using a dangerous weapon during the commission of a felony murder are the same offense, and for that reason, there is no impediment to imposing successive sentences for these two offenses. Since we do not discern any legislative intent to impose consecutive sentences for murder second degree and felony murder, however, the Court would not impose successive sentences for these two offenses were it to sustain those convictions. However, the Court finds that the merger doctrine is applicable in this matter and it precludes Vergile from being convicted of felony murder when the predicate felony is the same assault which resulted in the homicide. For that reason, the Court will set aside the convictions of Vergile as to Count III of the Information for felony murder and Count IV for using a dangerous weapon during the commission of a felony murder.

## II. Legal Standard for a Rule 29(c) Motion

The vehicle for considering the legality of a conviction is Rule 29 of the Federal Rules of Criminal Procedure. This Court may set aside a guilty verdict and enter a judgment of acquittal if appropriate. FED. R CR. P. 29(c)(2) (made applicable to the Superior Court by SUPER. CT. R.

7).[1] In considering this motion, the standard is whether, viewing the evidence adduced at trial in the light most favorable to the government, there was substantial evidence upon which a reasonable jury could have based its guilty verdict. *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir. 1991). A finding of insufficiency should "be confined to cases where the prosecution's failure is clear." *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002). Stated differently, the Court must determine whether a reasonable jury, on the evidence presented, could find beyond a reasonable doubt that the government had proven all the elements of the offenses. *Salmon*, 944 F.2d at 1113; *see also United States v. Fredericks*, 40 V.I. 366, 38 F. Supp. 2d 396, 398 (D.V.I. 1999). The Court will, then, consider whether there is a legal basis to the jury's guilty verdict as to Counts III and IV of the Information under the facts presented at Vergile's trial.

### III. The Convictions for Murder Second Degree and Felony Murder are Convictions for the Same Offense under *Blockburger*

Vergile argues that he cannot be convicted of both murder second degree and felony murder since they are the same offense. He argues that punishing him twice for these two crimes would violate the principles enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which generally prohibits multiple punishments for the same offense unless authorized by the Legislature.

█ Analysis of these arguments requires an understanding of the protections afforded to persons under the double jeopardy clause of the Fifth Amendment to the Constitution and of the Revised Organic Act of

---

[1] Practice in the Superior Court

 The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Federal Rules of Evidence.

SUPER. CT. R. 7.

 Rule 29. Motion for Judgment of Acquittal . . .
 29(c) After Jury Verdict or Discharge. . . .
 (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal . . .

FED. R. CRIM. P. 29(c).

the Virgin Islands[2]. The double jeopardy clause provides for three fundamental protections to an accused.

> [It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)); *United States v. Halper*, 490 U.S. 435, 440, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989); *Government of the Virgin Islands v. Olivierie*, No. 17211993, 1995 WL 696622, at *1 (Terr. Ct. Nov. 17, 1995) (Hodge, V., P.J. citing *Halper*, 490 U.S. at 440).

■ The double jeopardy clause ensures that the discretion of the sentencing court is confined to the legislative mandate for punishment for the crimes charged and for that reason, the multiple punishment prong of the double jeopardy clause focuses on legislative intent. *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S. Ct. 2536, 81 L. Ed. 2d 425 (1984). Thus, if the legislature intended separate punishments for the same offense, this would be permissible under the Constitution. In such a case, the Court's inquiry would be at an end, since this would not be a violation of the double jeopardy clause. *Id.*

■ Separate statutory crimes do not have to be identical in either the constituent elements or in the proof adduced at trial to be considered the same offense from the point of view of the double jeopardy clause. *Brown*, 432 U.S. at 164. To determine whether separate crimes are the same offense for double jeopardy purposes, a test has been developed by the Supreme Court and is found in *Blockburger*, 284 U.S. at 304. Under *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine

---

[2] The protections of the double jeopardy clause apply to the Virgin Islands by virtue of the Revised Organic Act of 1954. Section 3 of the Revised Organic Act provides that:

> No shall be held to answer for a criminal offense without due process of law, and no person for the same offense shall be twice put in jeopardy of punishment.

The United States Constitution Amendment 5, states that:

> [No person shall] be subject for the same offence to be twice put in jeopardy of life or limb; . . . nor be deprived of life, liberty, or property, without due process of law; . . .

whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*

■ Once the Blockburger test is utilized, a court can then determine whether the convictions at issue refer to one or more offenses for double jeopardy multiple punishment purposes. However, as noted above, the inquiry is not then at an end, because one must then consider whether the legislature intended multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. at 499.

■ Turning to the facts in this case, Vergile was charged in Count I of the Information with premeditated murder[3] and in Count III of the information with felony murder. He was found guilty of murder second degree, a lesser-included offense of premeditated murder. To find Vergile guilty of premeditated murder, the jury had to find that Vergile unlawfully killed a human being with malice aforethought and that the killing was done willfully, deliberately and with premeditation. V.I. CODE ANN. tit. 14, § 922(a)(1). To find Vergile guilty of felony murder, the jury had to find that Vergile unlawfully killed a human being with malice aforethought and that it was committed in perpetration of the felony of assault third degree. V.I. CODE ANN. tit. 14, § 922(a)(2). To find Vergile guilty of murder second degree, the jury had to find that Vergile unlawfully killed a human being with malice aforethought. V.I. CODE ANN. tit. 14, §§ 921, 922(b). Felony murder and premeditated murder are clearly not the same offense under the *Blockburger* test, since each offense requires proof of a fact that the other does not. Premeditated

---

[3] The relevant homicide statutes read as follows:

§ 921. Murder defined

Murder is the unlawful of a human being with malice aforethought.

§ 922. First and second degree murder defined:

(a) All murder which —

 (1) is perpetrated by means of poison, lying in wait, torture, detonation of a bomb or by any other of willful, deliberate and premeditated killing;

 (2) is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny; . . .

is murder in the first degree.

(b) All other kinds of murder are murder in the second degree.

V.I. CODE ANN. tit. 14, §§ 921, 922 (1996 & Supp. 2008).

murder requires the additional element that the killing be done willfully, deliberately and with premeditation, and felony murder requires that the killing be done in the furtherance of an enumerated felony.

In this case, though, Vergile was not convicted of premeditated murder, but of murder second degree, the lesser included-offense of premeditated murder. Murder second degree is a lesser-included offense of felony murder, as well as a lesser included offense of premeditated murder. A lesser-included offense is one that contains some but not all elements of the greater crime. *Government of the Virgin Islands v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982). To prove the elements of a lesser-included offense does not require proof of any element beyond what is required in proving the greater offense. *Id.* In reaching the determination, the offenses are considered in the abstract without regard to the facts of the particular case. *Id.* Since murder second degree contains some but not all of the elements of felony murder, it is a lesser-included offense of felony murder, since proving murder second degree requires proof of an unlawful killing with malice aforethought, but not that the lulling occurred in the perpetration of an assault third degree. In contrast, the elements of felony murder include all of the elements of murder second degree. Murder second degree is, therefore, the same offense as felony murder from the point of view of the multiple punishment aspect of the double jeopardy clause. *Brown v. Ohio*, 432 U.S. at 168 (the greater offense is by definition the same offense as the lesser-included offense for double jeopardy purposes); *see also Bedford*, 671 F.2d at 765 (lesser-included offense would never constitute a different offense and seldom would be an additional offense within the meaning of Rule 7(e) of the Federal Rules of Criminal Procedure).

Since felony murder and murder second degree are the same offense from a double jeopardy perspective, we must determine whether the legislature intended separate punishment for felony murder and murder second degree. The question of whether multiple punishments are permissible when dealing with the same offenses after making the analysis required under *Blockburger* is one of legislative intent. *Ohio v. Johnson*, 467 U.S. at 499, n. 8.

The People argue that the Virgin Islands legislature intended to increase the penalties for murder by virtue of amending the murder statute in 2001 and adding first, second and third degree assault and larceny as predicate felonies for the crime of felony murder. This may be true, since

the result of the amendment of the statute would be to increase the penalty for certain murders from a term of years of imprisonment with a minimum of five years to a mandatory term of imprisonment of natural life. However, there is no indication in the legislative history of the statute that the Legislature intended that by virtue of the amendment of the felony murder statute that successive punishments be imposed for any conviction of felony murder which would be in addition to the punishment imposed for a conviction for the underlying murder. If this were the intent of the Legislature, it should have been clearly expressed. Since it was not, the Court infers that the Legislature did not intend successive punishments for murder second degree and felony murder when the facts indicate that they arise out of the same acts. The Court would not, therefore, impose separate punishments in this case for the conviction of murder second degree and felony murder.[4]

■ Defendant has also moved to set aside the conviction of using a dangerous weapon during the commission of the crime of felony murder ("using a dangerous weapon") under Count IV of the Information. Defendant has not advanced a good reason for the vacation of this conviction on multiplicity grounds. Using a dangerous weapon and second degree murder are clearly not the same offense, since each has different elements from the other. The offense of using a dangerous weapon requires possession or use of a weapon and that is not an element of murder second degree. In comparison, murder second degree requires an unlawful killing with malice aforethought which is not an element of using a dangerous weapon. Since each crime contains an element that the other does not, they are not the same offense from the point of view of the double jeopardy clause.

■ The flaw in Vergile's argument is that his analysis under *Blockburger* flows from the actual facts of this case, and not from the charges in the Information. The test under *Blockburger* is to be pursued by determining whether each offense requires proof of a fact that the other does not. Since proving the crime of using a dangerous weapon requires proof of a fact not required in the proof of murder second degree and vice versa, the two charges are not the same even though under the facts of this

---

[4] Since the Court concludes that the convictions under Counts III and IV have to be set aside based upon the reasoning below, the question of sentencing under Counts III and IV is moot.

case, Vergile used the dangerous weapon in accomplishing the murder. Since the two crimes of using a dangerous weapon and murder second degree are not the same offense under *Blockburger*, successive punishments can be imposed without violating the double jeopardy clause.[5]

In conclusion on this point, the crime of murder second degree and felony murder are the same offense after conducting the *Blockburger* analysis, since murder second degree is a lesser-included offense of felony murder. The Legislature has not indicated a clear intent to impose successive punishments for these two crimes and, therefore, successive punishments cannot be imposed. The crimes of murder second degree and using a dangerous weapon are different offenses for double jeopardy purposes, and, if the Legislature chooses, it can impose separate punishments for these offenses.[6] Having made these determinations, the Court moves on to Vergile's second argument, that the crime of assault third degree, the predicate felony for the felony murder conviction, merges with the acts constituting the murder such that the convictions for felony murder and using a dangerous weapon cannot stand.

### IV. Because of the Merger Doctrine, the Felony Murder Conviction under Count III and the Related Weapons Conviction under Count IV Must Be Set Aside

■ Under the merger doctrine, an underlying felony which results in the homicide or which is an integral part of the homicide can not be used

---

[5] The Virgin Islands Legislature has in fact, made the determination that additional punishment may be imposed for the crime of using a dangerous weapon during the commission of a crime of violence. The pertinent statute reads as follows:

§ 2251. Carrying or using dangerous weapons

(a) Whoever—

(2) with intent to use the same against another, has, possesses, bears, transports, carries or has under his proximate control, . . . any . . . dangerous or deadly weapon shall —

(B) if he . . . possesses, bears, transports, carries or has under his proximate control, any such weapon during the commission or attempted commission of a crime of violence . . . shall be fined $10,000 and imprisoned not more than fifteen (15) years, which penalty shall be in addition to-the penalty provided for the commission of, or attempt to commit, the crime of violence (emphasis added).

V.I. CODE ANN. tit. 14, § 2251(a)(2)(B) (1996).

[6] *See* Footnote 5 above.

as the predicate felony to support a felony murder conviction. Since the assault third degree resulted in the homicide and is an integral part of the homicide in question, it cannot be used as the predicate felony for the felony murder conviction, and the convictions as to Counts III and IV must, therefore, be set aside.

The felony murder rule has its origins in the common law of England. *See* generally Robert Elliot, *The Merger Doctrine As A Limitation On the Felony-Murder Rule: A Balance of Criminal Law Principles*, 13 WAKE FOREST L. REV. 369, 376 (1977) (discussing the reasoning and philosophy behind the felony murder rule and examining some of the distinctions made between some of the states that have different statutes). The underlying basis of the rule was not challenged in common law England, because almost every felony at that time was punishable by death, and it made little difference whether the person was hung for the death of the victim or for the underlying felony. *State v. Burkhart*, 325 Mont. 27, 103 P.3d 1037, 1044 (2004). As time passed, some began to question the harshness of the felony murder rule, and it was finally abolished in England in 1957. *Id.* Today, however, it survives in one form or another in almost every state of the Union. 13 WAKE FOREST L. REV. at 377. The continued existence of the felony murder in this country is based upon the belief that the application of the rule acts as a deterrent against the commission of certain heinous crimes when the prospective perpetrator realizes that engaging in conduct that involves a risk of death could lead to an increased penalty in the event of a death occurring during the prohibited crime. *Id.* at 374.

▮ To mitigate against the harshness of the felony murder rule, many jurisdictions have adopted the "merger doctrine," a principle which limits the application of the felony murder rule under certain circumstances. In general, the merger doctrine prohibits the prosecution from using an assault which is "included in fact" or which is an "integral part" of the lulling as a predicate felony for the purposes of the felony murder statute.

> [E]xplaining the basis for the merger doctrine, courts and legal com-
> mentators reasoned that, because a homicide generally results from the
> commission of an assault, every felonious assault ending in death au-
> tomatically would be elevated to murder in the event a felonious as-
> sault could serve as the predicate felony for purposes of the felony-
> murder doctrine. Consequently, application of the felony-murder rule

to felonious assaults would usurp most of the law of homicide, relieve the prosecution in the great majority of homicide cases of the burden of having to prove malice in order to obtain a murder conviction, and thereby frustrate the Legislature's intent to punish certain felonious assaults resulting in death (those committed with malice aforethought, and therefore punishable as murder) more harshly than other felonious assaults that happened to result in death (those committed without malice aforethought, and therefore punishable as manslaughter).

*Bowman v. State*, 162 Wash.2d 325, 172 P.3d 681 (2007) (citing *People v. Hansen*, 9 Cal.4th 300, 311-12, 36 Cal.Rptr.2d 609, 885 P.2d 1022 (1994)); *see also Quillen v. State*, 163 P.3d 587, 590 (Okla. App. 2007) ("The fact that this Court has recognized the merger doctrine for over one hundred years without legislative intervention lends credibility to the conclusion that this Court's application of the merger doctrine is not at odds with legislative intent.").

There are different approaches adopted by the courts in determining if the underlying felony will merge into the homicide. However, whatever test is used by the jurisdiction, the main concern for the states that follow the merger rule is that the use of an underlying felony which directly results in or which is an integral part of the homicide would eliminate the distinctions between the different gradations of homicide. *See* 13 WAKE FOREST LAW REVIEW at 377, 380; *see, e.g., People v. Moran*, 246 N.Y. 100, 158 N.E. 35, 36 (N.Y. 1927) (Cardozo, J.) (allowing felonious assault which culminates in homicide as the underlying felony "would mean that every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential . . . The felony must be one that is independent of the homicide and the assault merged therein . . ."); *State v. Fisher*, 120 Kan. 226, 243 P. 291, 293 (1926) (the effect of allowing assault with a deadly weapon to support a felony murder conviction would mean that any homicide not excusable or justified which is defined as manslaughter or murder in the second degree would constitute murder in the first degree, or in other words, there could be no such thing as any lower degree of homicide than murder in the first degree); *People v. Ireland*, 70 Cal. 2d 522, 75 Cal. Rptr. 188, 450 P.2d 580, 590 (1969) (allowing the felony murder rule to apply where homicide has been committed as a result of a felonious assault, a category

which includes the great majority of all homicides, would effectively preclude the jury from considering the issue of malice aforethought in such cases, and this type of bootstrapping finds support neither in logic nor in law).

The rationale behind the Virgin Islands felony murder rule is that murder should be aggravated from murder second degree to murder first degree when the homicide is committed while perpetrating or attempting to perpetrate certain enumerated felonies. V.I. CODE ANN. tit. 14, § 922(a)(2). The commission of one of the enumerated felonies is considered to be so dangerous that when death occurs while the defendant is committing one of these felonies, it should be aggravated to murder first degree. *See, e.g.*, 13 WAKE FOREST L. REV. at 374; *see also People v. Cahill*, 2 N.Y.3d 14, 809 N.E.2d 561, 587-588, 777 N.Y.S.2d 332 (2003) (New York legislature created sub-class . . . of defendants who in contrast to others who commit intentional murder require the death penalty, because of having committed murder in furtherance of certain enumerated felonies). It is not necessary in such a situation to prove the willfulness, premeditation or deliberation ordinarily required for murder first degree if the crime is committed while perpetrating or attempting to perpetrate one of the enumerated felonies, since the separate commission of one of these felonies is a separate aggravating factor. The merger rule was developed in other jurisdictions because when the homicide results from the felony itself or when the commission of the predicate felony is an integral part of the commission of the homicide itself there is no independent felony to aggravate the homicide to murder first degree. *See People v. Garcia*, 162 Cal.App.4th 18, 29, 74 Cal. Rptr. 3d 912 (Cal. App. 2 Dist. 2008) (discussing the evolution and history of the merger doctrine under California law and finding that the "felony-murder instruction could not be given when it is based upon an assault with a deadly weapon that is an 'integral part of the homicide' and that is 'included *in fact* within the offense charged.' ") (citing *Ireland*, 450 P.2d at 589-590). Under Illinois law, "the relevant inquiry is not the number of acts committed by defendant but, rather, whether the predicate felony underlying the felony murder charge was inherent in the killing and involved conduct with a felonious purpose other than the conduct that resulted in the killing." *People v. Phillips*, 383 Ill. App. 3d 521, 890 N.E.2d 1058, 1074, 322 Ill. Dec. 139 (Ill. App. 2008) (discussing Illinois' implicit rejection of the merger doctrine, same-act doctrine and collateral-felony doctrine and

141

upholding defendant's felony 'murder conviction predicated on aggravated arson because, "it involved conduct with a felonious purpose other than killing . . . '[w]hen the intent is to kill, there is no predicate felony; it is only when there is no intent to kill that a predicate felony is possible.' ") (citing *People v. Boyd*, 356 Ill. App. 3d 254, 825 N.E.2d 364, 369, 292 Ill. Dec. 108 (Ill. App. 2005)).

The instant case illustrates why the merger doctrine is appropriate to apply when the underlying felony is assault third degree, which culminated in the homicide or which was an integral part of the homicide. Vergile was convicted of committing a homicide while perpetrating the felony of assault third degree by using a stone as a deadly weapon. He could not have committed the homicide without committing the assault with the deadly weapon. Allowing the conviction for felony murder to stand in this case would mean that the distinction between first and second degree murders had been abolished by the Legislature in the Virgin Islands since most, if not all, murders require an assault in some from as an integral part of the homicide in fact. This wholesale elimination of the distinction between murder first degree and murder second degree could not have been the intent of the Legislature, since, if they had intended to do so, it would have been clearly expressed. If that had in fact, been the intent, there would have no longer been any need to distinguish between the two degrees of murder, since virtually all murders would have been first degree murders by the mere expedient of the prosecutor charging the assault which resulted in the homicide as the underlying felony. *See First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 402 (3d Cir. 1999) ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with [the Legislature's] intention, since the plain-meaning rule is 'an axiom of experience [rather] than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' ") (quoting *Boston Sand & Gravel Co. v. United States*, 278 U.S. 41, 48, 49 S. Ct. 52, 73 L. Ed. 170 (1928)). Because of the anomaly that would be created by allowing an assault that is an integral part of the homicide to be the predicate felony, it is the holding of this Court that an assault that is an integral part of the murder itself cannot be the predicate felony under the felony murder statute to aggravate the crime from murder second degree to murder first degree. The Court will, therefore, set aside the conviction for felony murder as to Count III of the Information. The Court

will also set aside the conviction of the Defendant as to Count IV of the Information, using a dangerous weapon during commission of the crime of felony murder, since that conviction cannot stand upon setting aside the conviction for felony murder.[7]

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Acquittal as to Counts III and IV will be granted, and said Counts will be dismissed since the murder in this case merged with the underlying felony of assault third degree. A separate Order follows.

---

[7] The result of the Court's reasoning may have been different if the predicate felony charged for the felony murder had been assault second degree involving the use of acid on the victim by Vergile, rather than the assault third degree involving the use of the stone by Vergile. Since the homicide was not a result of the use of the acid, and since it could be argued that the burning of the victim by the acid was not an integral part of the homicide, the People may have had a stronger argument that the merger doctrine would not apply under such circumstances. The Court will not decide whether the merger doctrine would have applied under that set of circumstances, though, since the felony murder actually charged and upon which the jury deliberated, involved the predicate felony of assault third degree by the use of a stone and not an assault second degree committed with acid.