OPINION OF THE COURT
Edward H. Lehner, J.
This article 78 proceeding principally raises the issue of whether Governor Carey’s act of urging his' appointed Industrial Commissioner to repeal a regulation, the retention of which the Governor believed would have a deleterious economic impact on a segment of industry within the State, is improper pressure and a wrongful act that warrants a trial of whether the subsequent repeal was unlawful.
Petitioners seek a judgment to annul the repeal of an administrative rule (12 NYCRR Subpart 14-16). In connection therewith they request, by separate motion, discovery prior to an immediate hearing of factual issues.
The rule, promulgated in July, 1979, essentially provided that, with certain exceptions, high pressure boilers could only be operated by a boiler operator certified by the State Department of Labor and that the boiler operator had to be on the premises. Similar regulations were then in effect in many of the larger municipalities throughout the State including New York City and Buffalo.
Petitioner William F. Treacy alleges that he is one of among many persons who were qualified to be so certified. Petitioner McSpedon, as a union official, alleges that he represents operating engineers whose “lives, safety and health will be inadequately protected and endangered” if the rule is not reinstated.
*681 The papers indicate that subsequent to adoption there was very strenuous industry lobbying and protests against the rule. As a result, on October 15, 1979 Industrial Commissioner Philip Ross created a task force to review the rule and its implementation throughout the State.
On November 1, 1979 the Administrative Regulations Review Commission (ARRC), which is a legislative commission created under article 5-B of the Legislative Law to “exercise oversight of the process of rule making” with regard, among other items, to “compliance with legislative intent” and “impact on the economy”, held a hearing with respect to the rule. (Legislative Law, § 87.) On November 8, 1979 it issued a report which urged Ross to “delay full implementation” for six months, and indicated that as a result of the hearing it found “no demonstrated assurance that on-premises attendance of certified operators will improve boiler efficiency or prevent accidents” and that “many businesses will incur substantial costs in order to comply with the boiler rules as written”.
On December 20, 1979 Ross responded to the ARRC and announced that the effective date of the rule would be delayed until April 1, 1980.
On February 27, 1980 Ross issued a report to industrial employers stating that “the conclusions to be drawn from the evidence are entirely one-sided” in favor of implementation of the rule and that he “searched in vain for contrary evidence”. However, he concluded the report by stating that “when we next meet” he had “an open mind to discuss the entire issue point by point”.
The affidavit of.former Deputy Commissioner John Flynn states that in early March, 1980 Ross received a personal call from Governor Carey (which is stated by the affiant to be the “first and only call” Ross had ever received from the Governor during Ross’s many years as commissioner) in which the Governor indicated his desire that Ross rescind the rule. In a subsequent meeting with Michael del Guidice, a high official on the Governor’s staff, it is alleged that Ross was again advised of the Governor’s opposition to the rule, essentially because of the cost to business of compliance.
*682 On March 13, 1980 Ross announced that he intended to rescind 12 NYCRR Subpart 14-16. On May 5, 1980, pursuant to the provisions of the State Administrative Procedure Act, a hearing was held on the proposed repeal. On January 1, 1981 Ross resigned as Industrial Commissioner and the Executive Industrial Commissioner William O’Toole thereupon assumed the responsibilities of commissioner. On June 18, 1981 he signed a formal order repealing 12 NYCRR Subpart 14-16 effective June 22, 1981. Respondent Lillian Roberts took office as Industrial Commissioner on July 2, 1981. By letter dated July 14, 1981 she was requested to review the repeal. In her response dated July 21, 1981, she declined “to reopen the matter”.
Petitioners argue that Commissioner O’Toole did not have the authority in his acting capacity to repeal the rule. As respondents correctly point out, pursuant to section 9 of the Public Officers Law, O’Toole did have the authority to exercise the powers of the Industrial Commissioner for the duration of the vacancy. (See Matter of Mylod v Graves, 272 NY 381). Section 11 of the Labor Law provides for “a deputy commissioner” and even though O’Toole’s title may differ, the function he served was clearly as such deputy.
It should initially be noted that we are here dealing with the repeal of a “rule”, which is defined in section 102 (subd 2, par [a]) of the State Administrative Procedure Act, and hence is governed by article 2 of the State Administrative Procedure Act which related to “rule making” authority and not article 3 which pertains to “adjudicatory proceedings”.
Section 205 of the State Administrative Procedure Act provides for judicial review of rules by means of an article 78 proceeding or by a declaratory judgment action unless another “exclusive procedure or remedy is provided by law”. Such an exclusive procedure is set forth in section 27 (subd 2, par c) of the Labor Law, which authorizes institution of an article 78 proceeding by a person “adversely affected” by the adoption or repeal of the type of “safety and health standard” involved herein.
CPLR 7803 states that the only questions that may be raised in a proceeding under the article are:
*683 “1. whether the body or officer failed to perform a duty enjoined upon it by law; or
“2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
“3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
“4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.”
In analyzing the relief requested in an article 78 proceeding, for certain purposes one still has to consider the historical origins of the writs encompassed within the framework of the article, to wit: mandamus, prohibition and certiorari. As indicated in Siegel, New York Practice (§§ 558-563), the lines separating the old writs are now somewhat muddy. However, it is clear that CPLR 7803 (subd 2) (prohibition) and subdivision 4 of the section (certiorari) are not applicable. Although a hearing was held, it was not the evidentiary adversary hearing contemplated by subdivision 4 and hence the “substantial evidence” concept set forth therein is not the test to be applied. Rather the hearing herein was to provide information and submit argument to the administrative rule maker. Thus, the commissioner was entitled to consider any information coming to his attention from whatever source and not limited to that presented at the hearing mandated by section 202 of the State Administrative Procedure Act. (125Bar Corp. v State Liq. Auth., 24 NY2d 174; Siegel, New York Practice, § 558.)
In light of the nature of the rule-making process, which is legislative in nature, there was nothing improper in Governor Carey directly or indirectly making his views on the issue known to the commissioner. Since the Governor apparently felt that the economic vitality of a certain segment of the business community was at stake on the matter, one might argue that not only was it proper for the Governor to let his opinion be heard, but it was his obliga *684 tion as chief executive of the State to lobby on an issue which he deemed important. No one would question the Governor’s right to make his views known to all policy makers in Washington and of course to members of the State Legislature. Does it become improper when the person rendering the legislative type determination is his appointee and a member of his informal cabinet.
The Industrial Commissioner is appointed by the Governor and holds office until the end of his term and serves as head of the Department of Labor. (Labor Law, § 10.) Ex parte contact with him by the Governor or anyone else would be improper if the matter were an adversary adjudicatory proceeding (State Administrative Procedure Act, § 307) in the same context that private contacts with a Judge or juror on a pending matter would be wrongful. But that is not the situation when dealing with the commissioner’s legislative function.
Petitioners further cite the private meetings the commissioner had with industry representatives as a reason for setting aside his repeal of the rule. However, for the same reasons ascribed to the propriety of contacts between the Governor and his commissioner, the court finds that such meetings are not wrongful. Although it is certainly preferable that all opinions be aired at the mandated public hearing, when dealing with the commissioner’s rule-making functions, separate meetings with advocates of a particular position are not improper.
The issue in this case comes down only to whether the action of Commissioners Ross and O’Toole in effecting the repeal was “arbitrary and capricious or an abuse of discretion” (CPLR 7803, subd 3), which has been defined as. acting “without sound basis in reason and * * * without regard to the facts.” (Pell v Board of Educ., 34 NY2d 222, 231.) See, Siegel, New York Practice (§ 561), where the nature of the type of proceeding before the court is characterized as “mandamus to review”.
From the transcripts of the hearings and the statements submitted thereat, there is certainly evidence to sustain either repeal or retention of the rule. The factor that raises qualms about the determination is that on February 27, *685 1980 Ross issued a report in which he indicated that as of that date the evidence was one-sided in favor of retention of the rule and only two weeks later he announced his intention to repeal the rule. From this petitioners imply that Ross did not make his own independent judgment in announcing repeal of the rule as required by section 27 of the Labor Law, but rather acted in a mánner mandated by the Governor.
Since from the evidence submitted, as contained in the voluminous record before the court, it cannot be said that the commissioner acted arbitrarily or abused his discretion in deciding to repeal the rule, and since the lobbying by the Governor and his staff was not improper, the court cannot find that the change of heart on the issue that developed in the two-week period following the issuance of the February 27 report warrants setting aside the repeal. Indeed Judges reviewing submitted matters often experience changes of views on the final outcome as research progresses. Here Ross even indicated in concluding his February 27 report that he still had an “open mind” on the issue.
Nor is it significant that cost may have played a major role in the decision. There is nothing in section 27 of the Labor Law to prohibit the cost of compliance from being considered in determining the rules to be adopted to “provide reasonable and adequate protection to the lives, safety or health of employees”.
Petitioners’ reliance on American Textile Mfrs. Inst. v Donovan (452 US 490) is misplaced. There the court was dealing with a Federal statute (US Code, tit 29, § 655, subd [b], par [5]) which provides: “The Secretary, in promulgating standards dealing with toxic materials or harmful physical agents under this subsection, shall set the standard which most adequately assures, to the extent feasible, on the basis of the best available evidence, that no employee will suffer material impairment of health or functional capacity even if such employee has regular exposure to the hazard dealt with by such standard for the period of his working life.” In interpreting the section the court found that Congress did not authorize consideration of cost factors as the goal in dealing with toxic materials was the *686 adoption of regulations so that “no employee will suffer material impairment of health” by reason of exposure thereto. No similar language is contained in section 27 of the Labor Law that could be interpreted to prohibit consideration of economic impact.
The case of Caristo Constr. Corp. v Rubin (30 Misc 2d 185), cited by petitioners is also not relevant. There a hearing was ordered by Special Term with respect to the adoption of a board of education resolution because a key report and the minutes of proceedings before the board were not submitted. Hence the court took testimony to determine if the resolution was properly adopted and if so whether it was arbitrary and capricious. Here there is no question that the required hearing was held and the evidence submitted thereat has been presented to the court.
It should finally be observed that there is a presumption that public officials act in accordance with their official duties. (Matter of Driscoll v Troy Housing Auth., 6 NY2d 513.) Such presumption was not overcome here.
In dealing with the branch of the application seeking to compel the incumbent Commissioner Lillian Roberts to reconsider the action by her predecessors, we are dealing with a request that is clearly in the nature of mandamus and hence not reviewable by a court where the official has discretion on the issue raised. (See Matter of Burr v Voorhis, 229 NY 382.) There is no statutory requirement that a commissioner consider the adoption or repeal of a regulation merely because it is requested. Hence since it is clear that consideration of such request lies completely in the discretion of the incumbent commissioner such branch of the application must also be denied.
In view of the above, the petition is dismissed and the motion for discovery is denied as moot.