**DYHANI HEYLIGER, Appellant/Defendan**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2013-0147

Supreme Court of the Virgin Islands

February 9, 2017

KELE ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant.*

PAMELA R. TEPPER, ESQ., Solicitor General, PAUL J. PAQUIN, ESQ. (argued), Assistant Attorney General, St. Thomas, USVI., *Attorneys for Appellee.*

HODGE, Chief Justice; CABRET, Associate Justice; and SWAN, Associate Justice.

## OPINION OF THE COURT

### (February 9, 2017)

SWAN, *Associate Justice.* Appellant Dyhani Heyliger was charged in a fifteen count amended information with the murder of Keith Dawson, Jr., during an attempt to perpetrate a third-degree assault against Shaquille Alexander Percell.[1] Heyliger now appeals from the Superior Court's January 21, 2014 judgment and commitment, which adjudged him guilty of all fifteen counts and sentenced him, *inter alia*, to life imprisonment

---

[1] The amended information charged Heyliger as follows: count one, first-degree felony murder in violation of V.I. CODE ANN. tit. 14 §§ 921, 922(a)(2); count two, unauthorized use of an unlicensed firearm during the commission of a first-degree felony murder in violation of V.I. CODE ANN. tit. 14 § 2253(a); count three, second degree murder in violation of V.I. CODE ANN. tit. 14 §§ 921, 922(b); count four, unauthorized use of an unlicensed firearm during the commission of a second degree murder in violation of V.I. CODE ANN. tit. 14 § 2253(a); count five, first degree assault in violation of V.I. CODE ANN. tit. 14 § 295(1); count six, unauthorized use of an unlicensed firearm during the commission of a first degree assault in violation of V.I. CODE ANN. tit. 14 § 2253(a); count seven, third degree assault in violation of V.I. CODE ANN. tit. 14 § 297(4); count eight, unauthorized use of an unlicensed firearm during the commission of a third degree assault in violation of V.I. CODE ANN. tit. 14 § 2253(a); count nine, third degree assault in violation of V.I. CODE ANN. tit. 14 § 297(2); count ten, unauthorized use of an unlicensed firearm during the commission of third degree assault in violation of V.I. CODE ANN. tit. 14 § 2253(a); count eleven, first degree assault in violation of V.I. CODE ANN. tit. 14 § 295(1); count twelve, unauthorized use of an unlicensed firearm during the commission of first degree assault in violation of V.I. CODE ANN. tit. 14 § 2253(a); count thirteen, third degree assault in violation of V.I. CODE ANN. tit. 14 § 297(2); count fourteen, unauthorized use of an unlicensed firearm during the commission of third degree assault, in violation of V.I. CODE ANN. tit. 14 § 2253(a); count fifteen, reckless endangerment in the first degree in violation of V.I. CODE ANN. tit. 14 §§ 625(a) and 11(a).

without the possibility of parole.[2] For the reasons elucidated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

At approximately 12:30 a.m. on December 8, 2012, Shaquille Alexander Percell, AKA "Reds" ("Percell") arrived at a nightclub in Subbase, St. Thomas to attend a dance. A few moments later, Dimitri Matthias ("Matthias"), Percell's friend who drove him to the nightclub earlier, returned to the club with Percell's cousin, Keith Dawson, Jr. ("Dawson, Jr."). All three men congregated inside the nightclub — "standing up, drinking [and] partying." (J.A. 182). At approximately 3:00 a.m., the dance ended, the club closed, and the three men walked to a pharmacy's parking lot, a short distance away, where Matthias had parked his car.

When the men entered the pharmacy's parking lot, Percell saw Dyhani Heyliger ("Heyliger") and his friends assembled at the western side of the parking lot. Percell and Heyliger knew each other but were "not getting along" from approximately a month or two prior. (J.A. 184). As a result of seeing of Heyliger, Percell felt "tension in the place," feared for his life and told Dawson, Jr. to "go get the gun" from Matthias' car. (J.A. 183-84). Subsequently, several gunshots were fired in the direction of Percell and Dawson, Jr. from the western side of the pharmacy's parking lot where Heyliger was present. (J.A. 183). Percell ducked before returning fire and an exchange of gunfire ensued between him and Heyliger. Unfortunately, Dawson, Jr., who was in an area behind Percell, sustained a single gunshot wound in his neck and died.

The Virgin Islands Police Department ("VIPD") arrived at the nightclub shortly afterwards to investigate. During their investigation, Percell gave two statements and tendered his firearm to the VIPD. Percell also identified Heyliger as the person who fired a gun at him in the pharmacy's parking lot. Based on this fact and other information generated from the VIPD's investigation, Heyliger became a suspect in Dawson, Jr.'s murder and was arrested on January 25, 2013. Upon his arrest, Heyliger gave a statement to VIPD Detective Mark Thomas, in

---

[2] The judgment and commitment was signed on January 15, 2014 and entered on January 21, 2014.

which he admitted to shooting at Percell in the pharmacy's parking lot on December 8, 2012.

Heyliger filed a pretrial motion to suppress his statement, in which he admitted to shooting at Percell. On May 3, 2013, the Superior Court held a suppression hearing on Heyliger's motion to suppress his statements and denied the motion.[3] On September 3, 2013, approximately a week before the commencement of his trial, Heyliger filed a *pro se* motion, which requested that new counsel be appointed for him on the grounds that his counsel was ineffective, unprepared to represent him, and attempted to coerce him to accept a plea offer from the People, among other allegations. The Superior Court held a hearing on Heyliger's motion to appoint new counsel, and after conducting a complete review of the file, concluded that Heyliger's counsel's performance did not fall below an objective standard of reasonableness. (J.A. 1505).

Heyliger's trial commenced on September 9, 2013. The People presented witnesses Detective Mark Thomas; Detective Jose Allen; Forensic Expert Maurice L. Cooper; Percell, who was the People's primary witness; and others. The People also offered into evidence Heyliger's statement and a video surveillance recording of the exchange of gunfire in the pharmacy's parking lot in the early morning on the day of the shooting. After the People rested its case, Heyliger moved the court for a judgment of acquittal under Federal Rule of Criminal Procedure 29, which the court denied after hearing arguments from both parties. Heyliger then rested his case without presenting any evidence on his behalf. The Superior Court then heard closing arguments and thereafter instructed the jury. After receiving instructions on September 13, 2013, the jury deliberated and returned unanimous verdicts of guilty on all fifteen counts charged in the amended information.

Heyliger filed *pro se* a "Motion for Judgment of Acquittal or in the Alternative a New Trial" on November 4, 2013. In addition, counsel for Heyliger filed a "Supplement to Defendant's Motion and Memorandum

---

[3] At the suppression hearing, counsel for Heyliger made a motion to withdraw from the case but later withdrew the motion to withdraw on the basis that he spoke to Heyliger and resolved the issue with him. (J.A. 1024). Additionally, acting upon the People's argument that Heyliger may later seek a reversal of any unfavorable judgment on a claim of ineffective assistance of counsel, the Superior Court examined Heyliger to ascertain that he fully understood his rights. (J.A. 1024-29).

346

of Law for Judgment of Acquittal or in the Alternate a New Trial" on November 21, 2013. The Superior Court denied both motions on December 12, 2013, and sentenced Heyliger on January 15, 2014, to life imprisonment without parole on count one, the charge of first-degree felony murder, and imposed different sentences on the remaining counts charged in the amended information.[4]

## II. JURISDICTION

■ Title 4, section 32(a) of the Virgin Islands Code provides, in pertinent part, that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Pursuant to V.I.S.CT.R. 5(b)(1), Heyliger's notice of appeal filed on December 24, 2013 was timely. Additionally, the Superior Court's January 15, 2014 judgment and commitment constitutes a final judgment; therefore, this Court possesses jurisdiction over Heyliger's appeal. *Williams v. People*, 58 V.I. 341, 345 (V.I. 2013) (collecting cases) (noting that it is well-established that in a criminal case "the written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment"). *See also Melendez v. People*, 56 V.I. 244, 251 (V.I. 2012).

## III. ISSUES AND STANDARD OF REVIEW

On appeal, Heyliger argues that there is insufficient evidence to convict him of first-degree felony murder under 14 V.I.C. § 922 (a)(2) and that the Superior Court erred when it failed to conduct a hearing on his pretrial claim of ineffective assistance of counsel.

---

[4] The Superior Court sentenced Heyliger on the remaining counts charged in the amended information as follows: count two: fifteen years to run concurrent and a $25,000 fine; count three: deemed merged with count one and stayed but 30 years concurrent; count four: deemed merged with count two and stayed, but fifteen years concurrent and $25,000; count five: deemed merged with count one and stayed, but fifteen years concurrent; count six: deemed merged with count two and stayed, but fifteen years and fined $25,000; count seven: deemed merged and stayed, but five years concurrent and fined $500 and $3,000; count eight: deemed merged with count two and stayed, but fifteen years concurrent and fined $25,000; count nine: deemed merged with count one and stayed, but five years concurrent; count ten: deemed merged with count two and stayed, but fifteen years concurrent and $25,000; count eleven: ten years to run concurrent with count one; count twelve: stayed but fifteen years concurrent and $25,000; count thirteen: merged with count eleven and stayed, but five years concurrent; count fourteen: deemed merged with count twelve and stayed, but fifteen years concurrent and $25,000; and count fifteen: five years to run concurrent with counts one, two, and eleven.

■ The standard of review for this Court's examination of the Superior Court's application of the law is plenary, while findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). " 'When [an] appellant[ ] challenges the sufficiency of the evidence presented at trial, it is well established that, in a review following conviction, all issues of credibility within the province of the jury must be viewed in the light most favorable to the government.' " *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009) (quoting *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990)). "We must be particularly deferential when determining whether a jury verdict rests on insufficient evidence, because as a reviewing court we may not usurp the role of the jury by re-weighing the evidence and re-assessing the credibility of witnesses." *Todman v. People*, 59 V.I. 675, 681 (V.I. 2015) (citing *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010)). "The appellate court must affirm the convictions if a rational trier of fact could have found the defendant[ ] guilty beyond a reasonable doubt and the convictions are supported by substantial evidence." *Latalladi*, 51 V.I. at 145 (quoting *Gonzalez*, 918 F.2d at 1132) (internal quotation marks omitted); *see also James v. People*, 60 V.I. 311, 317-18 (V.I. 2013) ("[W]e apply 'a particularly deferential standard of review.' " (citations omitted)); *Castor v. People*, 57 V.I. 482, 488 (V.I. 2012); *Smith v. People*, 51 V.I. 396, 398 (V.I. 2009); *Coleman v. Johnson*, 566 U.S. 650, 132 S. Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012). Notwithstanding the foregoing, "this evidence does not need to be inconsistent with every conclusion save that of guilt in order to sustain the verdict." *Latalladi*, 51 V.I. at 145 (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957)) (internal quotation marks omitted). Therefore, "[a]n appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears a very heavy burden." *Id.* (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)) (internal quotation marks omitted). If a criminal defendant fails to object to a Superior Court order or decision, we review for plain error, provided that the challenge has been forfeited rather than waived. V.I.S.CT. R. 4(h); V.I.S.CT. R. 22(m); *Phipps v. People*, 54 V.I. 543, 546 (V.I. 2011).

Finally, we review Heyliger's claim of ineffective assistance of counsel for proof by the defendant that his counsel's representation fell below an objective standard of reasonableness and whether the defendant has shown proof that but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Corraspe v. People*, 53 V.I.

470, 479-80 (V.I. 2010) (citing *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

## IV. DISCUSSION

### A. Title 14, section 922(a)(2) of the Virgin Islands Code is clear and unambiguous.

Heyliger argues for the first time on appeal that third-degree assault alone is insufficient evidence of assault in the third degree and larceny to support his felony-murder conviction under title 14, section 922(a)(2) of the Virgin Islands Code. In addition to arguing that the statute is plain and unambiguous, Heyliger asserts that the syntax of the statute, specifically the absence of the serial (i.e. Oxford) comma separating "assault in the third degree" and "and larceny" mandates that both "assault in the third degree and larceny" be charged together to sustain his conviction. To further buttress his argument, Heyliger propounds that the absence of a serial comma between "assault in the third degree" and "and larceny" means that the Virgin Islands Legislature intended that "assault in the third degree" and "larceny" constitute two parts of a single predicate felony. Further, citing to *People v. Vergile*, 50 V.I. 127, 143 (V.I. Super. Ct. 2008), Heyliger attempts to advance his argument by asserting that the merger doctrine applies in this case and prevents the sole use of assault in the third degree as the predicate felony. Accordingly, Heyliger urges us to adopt his preferred interpretation of 14 V.I.C. § 922(a)(2) that there must be a finding of both "assault in the third degree" and "larceny" for his conviction for first-degree felony murder to be affirmed.

The People challenged all the issues Heyliger raised on appeal. The People contends that Heyliger waived his right to argue that assault in the third degree does not support a first-degree felony murder charge unless charged with the crime of larceny because he did not raise the issue before the Superior Court; that there was sufficient evidence presented at trial to support Heyliger's conviction of first-degree felony murder; and that the Superior Court satisfied its duty when it inquired into Heyliger's pretrial claim of ineffective assistance of counsel. To further bolster its contention, the People asserts that *Vergile*, 50 V.I. at 143 supports Heyliger's conviction for felony murder. The People concludes therefore that Heyliger's conviction for first-degree felony murder must be affirmed. We find some of the People's arguments persuasive.

349

■ This Court applies plenary review of the Superior Court's construction of a statute. *Billu v. People*, 57 V.I. 455, 461 (V.I. 2012). "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning." *Brady v. Gov't of the V.I.*, 57 V.I. 433, 441 (V.I. 2012) (citing *In re Sherman*, 49 V.I. 452, 456 (V.I. 2008)); *see also In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015); *In re Reynolds*, 60 V.I. 330, 334 (V.I. 2013); *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422 (3d Cir. 2016). "[When] analyzing a statut[e] . . ., we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or another provision — wholly superfluous and without an independent meaning or function of its own." *In re L.O.F.*, 62 V.I. at 661 (quoting *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012) (internal quotation marks omitted). Importantly, "where a statutory scheme is plain and internally consistent, no statute should be read literally if such a reading is contrary to its objective and this Court must consider whether applying the statute's literal language leads to absurd consequences or is otherwise inconsistent with the Legislature's intent." *Id.* (brackets, ellipses, and internal quotation marks omitted) (quoting *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009)). "If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *Id.* (quoting *In re Reynolds*, 60 V.I. at 334) (internal quotation marks omitted); *see also Shoy v. People*, 55 V.I. 919, 926 (V.I. 2011); *Roth v. Norfalco LLC*, 651 F.3d 367, 379 (3rd Cir. 2011); *see Lamie v. United States Trustee*, 540 U.S. 526, 534, 538, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) ("[W]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms. . . . Our unwillingness to soften the import of [the Legislature's] chosen words even if we believe the words lead to a harsh outcome is longstanding.") (citation and internal quotation marks omitted).

■ We begin by examining the plain language of 14 V.I.C. § 922(a)(2). This statute provides in relevant part that "[a]ll murder which . . . is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny . . . is murder in the first degree." A close scrutiny of the statute reveals its plain and unambiguous meaning: it reflects the Virgin Islands Legislature's intention

350

to punish an individual who caused another person's death while committing or attempting to commit felonies such as "arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny." 14 V.I.C. § 922(a)(2). Title 14, section 922 of the Virgin Islands Code, like felony murder statutes in other jurisdictions, primarily attempts to "deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit." *People v. Washington*, 62 Cal. 2d 777, 44 Cal. Rptr. 442, 402 P.2d 130, 133 (Cal. 1965) (citations omitted); *see also United States v. Tham*, 118 F.3d 1501, 1509 (11th Cir. 1997) (noting that there is general agreement among the courts and commenters that the felony-murder rule was conceived to deter the commission of certain dangerous felonies). Title 14, section 922(a)(2) is plain and unambiguous about the type of conduct prohibited and " '[w]hen the words of a statute are unambiguous, then, the first canon is also the last: judicial inquiry is complete.' " *In re Sherman*, 49 V.I. at 464 (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992)).

■ Heyliger argues, however, that the grammatical arrangement and syntax of 14 V.I.C. § 922(a)(2), absent the serial comma between "assault in the third degree" and "and larceny," requires a finding of assault in the third degree and larceny as one unified charged offense. The reasoning implicit in Heyliger's argument is that the lack of a serial comma controls the interpretation of the statute; therefore, his conviction under 14 V.I.C. § 922(a)(2), which was predicated solely on "third degree assault," is insufficient standing alone to support his conviction of first-degree felony murder. This argument is, at best, specious.

"The serial comma [is the comma that] separates items, including the last from the next to last, in a list of more than two." BRYAN A. GARNER, THE ELEMENTS OF LEGAL STYLE 15 (2d ed. 2002). The main purpose of using the serial comma is to prevent ambiguity because "omitting it sometimes result in awkwardness [and] miscue . . . ." BRYAN A. GARNER, ET AL. THE REDBOOK: A MANUAL ON LEGAL STYLE 4 (2002). Importantly, although the use of the serial comma is never incorrect and omitting it may cause ambiguity, *"[s]ome writers treat it as optional — and that seems to be the trend in popular writing* — but the safer practice is to use it consistently." *Id.* (emphasis added).

■ Admittedly, although the use of a serial comma can aid in statutory interpretation, caution should be exercised in utilizing it as a controlling

interpretive tool for the reason that its use is entirely optional and not universal. *See United States v. Bass*, 404 U.S. 336, 340, 92 S. Ct. 515, 30 L. Ed. 2d 488 n. 6 (1971) (noting that "many leading grammarians, while sometimes noting that commas at the end of series can avoid ambiguity, concede that use of such commas is discretionary" (citation omitted)); *see also*, B. EVANS & C. EVANS, A DICTIONARY OF USAGE 103 (1957); M. NICHOLSON, A DICTIONARY OF AMERICAN-ENGLISH USAGE 94 (1957); R. COPPERUD, A DICTIONARY OF USAGE AND STYLE 94-95 (1964); *cf.* W. STRUNK & E. WHITE, THE ELEMENTS OF STYLE 1 - 2 (1959). Essentially, one employing the serial comma rule would inevitably reach Heyliger's interpretation that "arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny," absent the serial comma, inseparably links "assault in the third degree and larceny" as one felony among the eight other felonies listed. Alternatively, nonsubscribers to this rule understand that while no comma separates "assault in the third degree" and "and larceny," a separation is provided by the conjunction "and" which is used in lieu of the serial comma and serves the exact function of listing the different felonies on which the crime of felony murder can be predicated, reasonably interpreting "assault in the third degree and larceny" as separate and independent felonies in the statute. Because the use of the serial comma is optional, subscribers and non-subscribers to the rule will inevitably reach a different conclusion. Therefore, employing the serial comma rule as the sole means of interpreting the statute could misrepresent the legislators' intention in drafting and enacting the statute.

■ ■ A substantive review of the enumerated felonies listed in 14 V.I.C. § 922(a)(2) further illustrates that Heyliger's interpretation of the statute based solely on the absence of a serial comma distorts the meaning of the statute and the intent of the Virgin Islands Legislature. Importantly, a substantive comparison of the felony of "robbery" on the one hand, and, as Heyliger proposes, "assault in the third degree and larceny" on the other, militates against a rational understanding of the law and the elements constituting each crime. Larceny[5] is the "unlawful taking, stealing, carrying, leading, or driving away the personal property

---

[5] Larceny is divided into two degrees, grand larceny and petit larceny. 14 V.I.C. § 1081(b).

of another." 14 V.I.C. § 1081(a). An assault in the third degree occurs when:

> (a) Whoever, under circumstances not amounting to an assault in the first or second degree
>
> > (1) assaults another person with intent to commit a felony;
> >
> > (2) assaults another with a deadly weapon;
> >
> > (3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;
> >
> > (4) assaults another and inflicts serious bodily injury upon the person assaulted[.]

14 V.I.C. § 297(a). Assault, as used in 14 V.I.C § 297(a), means "attempt-[ing] to commit a battery; or mak[ing] a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery commits an assault." 14 V.I.C. § 291. Conjoining assault in the third degree and larceny adds an element of assault to larceny which is the same or similar to the elements of robbery, which is defined as "the unlawful taking of personal property in the possession of another, from his person or immediate presence and against his will, by means of force or fear." 14 V.I.C. § 1861. Robbery, however, is one of the enumerated felonies already listed in the statute. Heyliger's argument that the Virgin Islands Legislature intended "assault in the third degree and larceny" to be one predicate felony therefore results in a superfluous and highly outlandish reading of the statute. This Court's substantive assessment of both felonies leaves no cogent reason as to why the Virgin Islands Legislature would combine "assault in the third degree and larceny" as one predicate felony when combining them would constitute a form of robbery — a felony already listed in the series of predicate offenses that are sufficient to create felony murder. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (2005); *see also V.I. Narcotics Strike Force v. Gov't of the V.I. Pub. Emps. Relations Bd.*, 60 V.I. 204, 214 n.7 (V.I. 2013) (interpretations of statutory language that produce absurd results are to be avoided). "[S]yntax and grammatical rules do not completely control issues of statutory interpretation." *Elliot Coal Mining Co. v. Dir., Office of Workers' Comp. Programs*, 17 F.3d 616, 631 (3d Cir. 1994) (citing *Longview Fibre Co. v.*

*Rasmussen*, 980 F.2d 1307, 1311 (9th Cir. 1992)). And, the "[s]tatutory text is to be interpreted to give consistent and harmonious effect to each of its provisions." *United States v. Barnes*, 295 F.3d 1354, 1364, 353 U.S. App. D.C. 87 (D.C. Cir. 2002) (quoting *Alabama Power Co. v. EPA*, 40 F.3d 450 455, 309 U.S. App. D.C. 194 (D.C. Cir. 1994)) (internal quotation marks omitted).

 Notably, if "larceny" were intended to coalesce with the crime of "assault in the third degree" in 14 V.I.C. § 922, it defies plausibility not to also attach larceny to the listed felonies of "assault in the first degree" and "assault in the second degree." The legislature, however, eschewed such language in the statute because it intended to extend the scope of the crime of murder in the first degree to include the independent act of unlawfully taking the personal property of another, which is larceny. *See* 14 V.I.C. § 1081(a). Accordingly, an interpretation utilizing the conjunction "and" as the final separator in a list of more than two predicate unlawful acts in 14 V.I.C. § 922(a)(2), reveals a more natural and sensible interpretation and understanding of the statute. When we interpret a statute, "we are to determine its true, natural meaning, where ascertainable, irrespective of cumbersome syntax." *Barnes*, 295 F.3d at 1361 (citing *United States v. Moore*, 613 F.2d 1029, 1040, 198 U.S. App. D.C. 296 (D.C. Cir. 1979)) (some citations omitted). Moreover, "the task of statutory interpretation involves more than the application of syntactic and semantic rules," especially when there is no consensus regarding the appropriate use of the serial comma in English grammar and people can reasonably disagree on the implications arising from its presence or absence. *Cablevision of Boston, Inc. v. Pub. Improvement Comm'n*, 184 F.3d 88, 101 (1st Cir. 1999); *see also Bass*, 404 U.S. at 340 n.6 (noting that "[w]hen grammarians are divided . . . we will not attach significance to an omitted comma.").

 Importantly, the Virgin Islands Legislature adopted this statute in 1921.[6] *See* 1921 Codes Title IV, ch. 5 § 2. In 1957, the Virgin Islands

---

[6] *See* 1921 Codes, Title IV, ch.5, § 2, *see also* 1921 Codes, Title 14 V.I.C. § 922:

 (a) All murder which —

 (1) Is perpetrated by means of poison, lying in wait, torture or by any kind of willful, deliberate and premeditated killing; or

 (2) Is committed in the perpetration or attempt to perpetuate arson, burglary, kidnapping, rape, robbery or mayhem — is murder in the first degree

Legislature amended the statute to add kidnapping as a felony on which felony murder may be predicated. The Virgin Islands Legislature made a second amendment to the statute in 2001 to increase the number of predicate felonies, adding "assault in the first degree,"[7] "assault in the second degree,"[8] and "assault in the third degree[9] and larceny" to the list of enumerated felonies, in addition to increasing the minimum and maximum sentences for certain murders. *See* Act No. 6493, § 1(a) (V.I.

---

(b) All other kinds of murder are murder in the second degree.

[7] 14 V.I.C. § 295. Whoever

(1) with intent to commit murder, assaults another;

(2) with intent to kill, administers or causes to be administered to another, any poison or other noxious or destructive substance or liquid, and death does not result;

(3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another; or shall be imprisoned not more than 15 years;

(4) commits an act under paragraphs (1) or (2) or (3) of this section in an act of domestic violence as defined in Title 16 Virgin Islands Code, chapter 2, section 91(b) shall be sentenced to not less than 2 years and not more than 20 years and shall be fined not less than $1,000.

[8] 14 V.I.C. § 296. Whoever willfully

(1) mingles any poison with any food, drink, or medicine, with intent that the same shall be taken by any human being, to his injury; or

(2) poisons any spring, well, or reservoir of water; or

(3) strangle or attempts to strangle any person in an act of domestic violence; or

(4) places or throws, or causes to be placed or thrown, upon the person of another, any vitriol, corrosive acid, pepper, hot water, or chemical of any nature with intent to injure the flesh or disfigure the body or clothes of such person shall be imprisoned not more than 10 years and if the conviction results from an act of domestic violence, the person shall be fined no less than $1,000 and shall successfully complete certified mandatory Batters Intervention Program.

[9] 14 V.I.C. § 297: (a) Whoever, under circumstances not amounting to an assault in the first or second degree

(1) assaults another person with intent to commit a felony;

(2) assaults another with a deadly weapon;

(3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;

(4) assaults another and inflicts serious bodily injury upon the person assaulted; or whoever under any circumstances;

(5) [Deleted.] shall be fined not less than $500 and not more than $3,000 or imprisoned not more than 5 years or both.

(b) Whoever, under circumstances not amounting to an assault in the first or second degree assaults a peace officer in the lawful discharge of the duties of his office with a weapon of any kind, if it was known or declared to the defendant that the person assaulted was a peace officer discharging an official duty, shall be fined not less than $2,000 and not more than $10,000, or imprisoned not more than 10 years, or both.

Reg. Sess. 2001). The Virgin Islands Legislature's amendment to the statute does not express an intention to combine "assault in the third degree" and "larceny" as a single predicate with compound felonies. If this were the intent of the legislature, it should have concisely and adroitly crafted language to explicitly express such an intent. Because there is no suggestion that this was the intent of the legislature, and this Court cannot impose an interpretation contrary to the intent of the legislature, we conclude that the Virgin Islands Legislature never intended to combine "assault in the third degree and larceny" to comprise a single felony for purposes of the felony murder statute.

Heyliger's interpretation of 14 V.I.C. § 922(a)(2), based on the absence of the serial comma, is diametrically opposed to the plain and sensible meaning of the statute. We are convinced, however, that the drafters of the statute mention the assault crimes in descending order of severity and punishment. For example, assault in the first degree is punishable by imprisonment for 15 years; assault in the second degree by punishment of 10 years; and assault in the third degree by punishment of 5 years. This is merely the statutory arrangement. The fact that larceny as a felony happenstancely appears in proximity to "assault in the third degree" is nothing more than a product of commonsensical statutory arrangement. And, because "assault in the third degree" is the least severe of the assault crimes and the last assault crime enumerated as a predicate felony it precedes the felony of larceny. Furthermore, the fact that larceny is the last felony in the series of listed felonies neither gives larceny any greater importance nor simultaneously renders it a part of a compound felony. In listing all the enumerated felonies in the statute, one of the felonies had to be listed first and one had to be listed last.

 Heyliger also cites *Vergile*, 50 V.I. at 143 to seemingly suggest that he cannot be lawfully charged and convicted of felony murder because his assault in the third-degree charge is an integral part of the murder, and, in light of the merger doctrine, may not be used as the enumerated felony upon which felony murder may be predicated. "Under the merger doctrine, an underlying felony which results in the homicide or which is an integral part of the homicide cannot be used as the predicate felony to support a felony murder conviction." *Id.* at 138-39. But, *Vergile* is not a case in which the assault in the third-degree charge was independent of the murder. Contrary to Heyliger's argument, the merger doctrine is inapplicable here because the evidence confirms that

Heyliger committed an assault in the third degree in violation of 14 V.I.C. § 297 when he pointed a gun and fired shots at Percell, who ducked when he saw muzzle flashes resulting from Heyliger firing shots, one of which struck Dawson, Jr. in the neck and killed him. More succinctly, Heyliger assaulted Percell, but he murdered Dawson, Jr.; these are two independent crimes with two different victims.

### B. There was sufficient evidence for a rational jury to convict Heyliger of first-degree felony murder beyond a reasonable doubt under 14 V.I.C. § 922(a)(2).

█ Having established that "assault in the third degree" is a felony upon which felony murder can solely be predicated pursuant to 14 V.I.C. § 922(a)(2), we review Heyliger's challenge to the sufficiency of the evidence supporting his conviction. Heyliger claims that the evidence adduced at trial was insufficient for a rational jury to find him guilty beyond a reasonable doubt of firstdegree felony murder. The standard of review of a claim of insufficiency of evidence is "whether there is substantial evidence, when viewed in the light most favorable to the [People], to support the jury's verdict." *Gumbs v. People*, 64 V.I. 491, 499 (V.I. 2016) (quoting *McIntosh v. People*, 57 V.I. 669, 678 (V.I. 2012)); *see also Coleman*, 132 S. Ct. at 2064; *United States v. Wright*, 665 F.3d 560, 567 (3rd Cir. 2012); *United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010). In determining whether the People presented sufficient evidence to sustain the conviction "this Court is required to view the evidence in the light most favorable to the People and apply a highly deferential standard of review to the jury's verdict." *Augustine v. People*, 55 V.I. 678, 684 (V.I. 2011) (citing *Stevens v. People*, 52 V.I. 294, 304 (V.I. 2009)); *United States v. Jaimespimentz*, 488 Fed. Appx. 625, 627 (3rd Cir. 2012). "[I]f any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[,]" we will affirm the jury's verdict. *Thomas v. People*, 63 V.I. 595, 603 (V.I. 2015) (quoting *Webster v. People*, 60 V.I. 666, 678-79 (V.I. 2014)). Accordingly, "[a]n appellant who seeks to overturn a conviction on insufficiency of the evidence grounds bears 'a very heavy burden.'" *Latalladi*, 51 V.I. 145 (quoting *Losada*, 674 F.2d at 173); *see also United States v. Manning*, 738 F.3d 937, 945 (8th Cir.), *cert. denied*, 135 S. Ct. 149 (2014). If the People's evidence was insufficient, however, a guilty verdict will be vacated. *United States v. Dobbs*, 629 F.3d 1199, 1203 (10th Cir. 2011).

In count one of the amended information, the People charged Heyliger with first-degree felony murder of Dawson, Jr. under 14 V.I.C. § 922(a)(2), which provides that "[a]ll murder which is committed in the perpetration or attempt to perpetrate arson, burglary, kidnapping, rape, robbery or mayhem, assault in the first degree, assault in the second degree, assault in the third degree and larceny is murder in the first degree." *See* 14 V.I.C. § 921 (defining murder as "the unlawful killing of a human being with malice aforethought"); *see also* 14 V.I.C. § 291 (defining assault as "whoever . . . attempts to commit a battery or . . . makes a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery commits an assault"). To obtain a conviction on count one, the People are required to prove, under 14 V.I.C. §§ 921 and 922(a)(2), that Heyliger killed Dawson, Jr. during the perpetration or attempt to perpetrate an assault in the third degree upon Percell.

Here, there was sufficient evidence for a rational jury to find Heyliger guilty beyond a reasonable doubt of first-degree felony murder predicated upon assault in the third degree in violation of 14 V.I.C. §§ 921 and 922(a)(2). Percell testified that on December 8, 2012, at approximately 3:00 a.m. after the dance at the nightclub ended, he walked with Matthias and Dawson, Jr. to the eastern side of the pharmacy's parking lot where Matthias had parked his car. He admitted that when he saw Heyliger, with whom he had prior enmity, on the western side of the parking lot, he felt "tension in the place" and told Dawson, Jr. to "go get the gun." Percell then testified that he saw muzzle flashes directed at him from the area where Heyliger was present and that Heyliger shot at him first. The People also submitted into evidence the statement Heyliger gave the VIPD in which Heyliger admitted that he was located at the western side of the pharmacy's parking lot, that his brother retrieved a .9 millimeter firearm from the car for him, and that he used the .9 millimeter firearm to shoot at Percell three times.

Percell's testimony that Heyliger was first to fire shots is supported by the evidence presented by the People. Miguel Battista ("Battista") testified that he left Metropolis after the dance ended and that he spoke to Heyliger, whom he knew, while passing on the western side of the pharmacy's parking lot to where his car was parked but closer to another nearby business. Although Battista testified that he did not see Heyliger with a gun, his testimony that he heard the first fusillade of gunshots

coming from the western side of the parking lot is very corroborative of Percell's testimony that Heyliger fired his gun first from the western side of the parking lot where he was present. Further, the evidence of the video surveillance camera showing Percell ducking and hiding to take cover, *prior* to aiming and discharging his firearm in the western direction of the parking lot, also supports Percell's testimony that Heyliger first fired shots.

Makeda Simmonds ("Simmonds"), the VIPD crime scene technician who recorded and collected evidence at the crime scene, testified that the .40 caliber casings were all collected on the eastern side of the pharmacy's parking lot, which is consistent with Percell's testimony that he was standing at the eastern side of the pharmacy's parking lot when Heyliger shot at him and he returned fire. Simmonds also testified that nine .9 millimeter caliber casings were collected from the western side of the pharmacy's parking lot, which is consistent with Heyliger and Battista's testimony that Heyliger was standing on the western side of the pharmacy's parking lot. From her examination and collection of the evidence at the scene of the crime, Simmonds concluded that there were two shooters.

Maurice L. Cooper, a forensic science consultant with the VIPD, testified regarding the results of his examination and testing of the shell casings and bullets found at the crime scene. Cooper stated that he obtained two sets of shell casings and bullets: .40 caliber casing and .9 millimeter Lugar casings. Cooper further explained that he grouped the .40 caliber cartridge cases and compared them to the shell casing from the test fire he performed on the .40 caliber Smith and Wesson Springfield firearm, which the People retrieved from Percell and turned over to Cooper. Additionally, he testified that he compared all the .9 millimeter Luger cartridge cases to determine whether they could be fired from the same firearm. Cooper concluded that all the .9 millimeter caliber casings, with one exception, were all fired from the same gun.[10] Cooper further concluded that the .40 caliber casings were all identified as having been fired from the .40 caliber Smith and Wesson Springfield Armory firearm.

---

[10] To clarify the findings of his examination of the casings, Cooper explained that the one exception could not be identified or excluded as having been fired in the same firearm due to moisture, pressure or other factors but does not disprove his conclusion that only two firearms were discharged during the altercation.

Henceforth, Cooper ultimately concluded that two firearms were discharged during the fracas and bedlam.

Percell also testified that during the exchange of gunshots, Dawson, Jr. was behind him and that he neither shot at Dawson, Jr. nor did he shoot in the area behind him where Dawson, Jr. was present. Dawson, Jr., who was behind Percell during the exchange of gunshots, died from a single gunshot wound to the neck as confirmed by Dr. Francisco J. Landron, an expert in the field of forensic pathology, who performed an autopsy on Dawson, Jr. on December 11, 2012.

■■■ Viewing the evidence in the light most favorable to the People, a rational jury could find beyond a reasonable doubt that Heyliger committed third degree assault upon Percell because Percell saw muzzle flashes coming in his direction from the shots being fired by Heyliger and also because Percell feared for his life. Additionally, the jury could find that Heyliger killed Dawson, Jr. during his assault upon Percell because one of Heyliger's gunshots killed Dawson, Jr. as he stood behind Percell. Accordingly, there was sufficient evidence for a jury to find Heyliger guilty of first-degree felony murder of Dawson, Jr.

### C. The Superior Court held a hearing on Heyliger's pretrial claim of ineffective assistance of counsel and did not abuse its discretion in denying his request to appoint new counsel.

Heyliger argues next on appeal that his counsel's ineffective performance deprived him of his due process rights, and was therefore harmful error requiring reversal of his convictions. Specifically, Heyliger contends that the Superior Court did not hold a hearing on his pretrial "Motion to Appoint New Counsel." In support of his pretrial request, Heyliger alleged that:

> 3. Prior to the arraignment and receiving of any discovery in this matter [his] Attorney . . . told [him] to take a plea.
>
> 4. Although [he] has received the People's discovery productions, upon review and analysis thereof, certain critical and crucial pieces of discovery items still today have not been turned over to [him].
>
> 5. [He] has not received the autopsy report, nor certain ballistic reports in order to ascertain whether the firearm in the possession of the People is the firearm that projectiles or the bullets were fired from that entered the body of the deceased.

360

6. Throughout the time of his appointment, [he] has been questioning [his] Attorney . . . about the omission of the production by the People of the autopsy report, the ballistic reports and certain other issues in the case; however, [his] Attorney . . . would not give [him] straight answers to any of [his] questions, [his Attorney] would use obscenities to [him], and constantly repeating to [him] to plea guilty.

7. On a couple of occasions when [his] Attorney . . . visited [him] at the Bureau of Corrections, [his] Attorney . . . brought his son with him and [he] was reluctant to speak as [he] believed that it was a violation of the attorney-client privilege.

8. Additionally, from the conversations between [his] Attorney . . . and [him], [his] Attorney . . . has not prepared himself to defend [him] in this case; all [his] Attorney . . . is concerned with is for [him] to take a plea.

9. [He] has not dismiss [sic]the option to plea, but [his] Attorney . . . has not adequately communicated to [him] the reason to plea based upon the discovery for [him] to make an informed decision.

10. There is no real communication about the case between [him] and [his] Attorney . . . except for [his] Attorney['s] . . . insistence that [he] take a plea.

11. Should the Court allow this matter to proceed to trial, [his] constitutional rights will be violated and trampled upon as [his] Attorney['s] . . . representation of [him] will amount to the ineffective assistance of counsel; [his] Attorney . . . is not prepared to go to trial, he has not worked with [him] in preparing a defense in this matter and there is literally no communication between counsel and client.

. . . .

13. [He] has previously, through verbal request, ask [sic] that [he] be given new counsel.

(J.A. 1427-29).[11] To further bolster his argument, Heyliger contends that the Superior Court violated the discovery rule outlined in *Codrington v. People*, 57 V.I. 176 (V.I. 2012) because it failed to conduct an adequate inquiry into his pretrial allegations that his attorney was ineffective and unprepared to represent him.

---

[11] A complete review of the record reveals that Heyliger's "Motion to Appoint New Counsel" was unopposed by the People.

■ The Sixth Amendment of the United States Constitution guarantees the right to effective counsel in criminal proceedings.[12] *Morton v. People*, 59 V.I. 660, 669 (V.I. 2013); *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003) (per curiam); *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (Sixth Amendment right to counsel is right to effective counsel); *Cuyler v. Sullivan*, 446 U.S. 335, 344-45, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980) (the right to effective assistance applies to both retained and appointed counsel.). ' "Ordinarily, a claim of ineffective assistance of trial counsel is not appropriately reviewed for the first time on direct appeal, but must be raised by a collateral proceeding because the necessary facts about counsel's representation of the defendant have not been developed." ' *Corraspe*, 53 V.I. at 486 (quoting *Rivera v. Gov't of the V.I.*, 981 F. Supp. 893, 900 (D.V.I. App. Div. 1997)). "However, we may review such a claim on direct appeal if we conclude that we have an adequate record and thus an additional evidentiary hearing need not be conducted to develop the facts." *Id.* (quoting *Gov't of the V.I. v. Zepp*, 748 F.2d 125, 133 (3d. Cir. 1984)) (internal quotation marks omitted). Here, because Heyliger provided a full transcript of his trial proceedings and challenged only the Superior Court's "fail[ure] to conduct any inquiry into [his pretrial claims of ineffective assistance of counsel based on his] counsel's [lack of] prepar[ation]," (Appellant's Br. 25) we will review his claim on direct appeal. *See United States v. McLaughlin*, 386 F.3d 547, 556 (3d Cir. 2004) (stating that "Sixth Amendment ineffective assistance of counsel claims, under *Strickland* . . . are generally not entertained on a direct appeal").

■ We stated in *Codrington* that "[w]hen . . . a defendant asserts a pretrial claim of ineffective assistance of counsel, the trial court has a constitutional duty to conduct an inquiry sufficient to determine the truth and scope of the defendant's allegations." 57 V.I. at 192 (quoting *Aiken v. United States*, 956 A.2d 33, 38 (D.C. 2008)) (internal quotation marks omitted). This means that "[t]he court must conduct specific and thorough

---

[12] The Sixth Amendment is made applicable to the Virgin Islands through section 3 of the Revised Organic Act. *See* Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, *reprinted in* V.I. Code Ann., Historical Documents, Organic Acts, and U.S. Constitution at 73-77 (1995 Supp. 2013) (preceding V.I. Code Ann. tit. 1).

questioning sufficient to elucidate counsel's degree of compliance with the applicable criteria of professional competence" — a "duty that requires the [Superior C]ourt to undertake more than a mere *pro forma* inquiry." *Id.* (quoting *Aiken*, 956 A.2d at 38) (internal quotation marks omitted). In making this determination, "the substance and scope of the inquiry are committed to the sound discretion of the trial judge." *Aiken*, 956 A.2d 38 (quoting *Farrell v. United States*, 391 A.2d 755, 760 (D.C. 1978)) (internal quotation marks omitted). "[W]e will defer to the trial judge's determination as to the form, substance and scope of the inquiry unless the record compels us to act otherwise." *Id.* at 39 (quoting *Wingate v. United States*, 669 A.2d 1275, 1280 (D.C. 1995)) (internal quotation marks and citation omitted). The Superior Court's decision whether to grant new counsel is reviewed only for an abuse of discretion. *Id.* at 38-39.

 A review of Heyliger's claim by this Court finds no evidence that the Superior Court abused its discretion. Contrary to Heyliger's claim, the Superior Court held a hearing on his pretrial claim of ineffective assistance of counsel on September 3, 2013, the morning of jury selection, which was three days before the trial was scheduled to commence. All the parties, including Heyliger, were present and were given an opportunity to be heard. Heyliger's counsel and the People's counsel provided arguments; however, Heyliger informed the court that he had no arguments to provide but that he would proceed on the substance of his motion. The Superior Court judge then questioned the attorneys extensively and denied Heyliger's motion without prejudice.

Although Heyliger argued only that an appropriate hearing was not held on this ineffective assistance of counsel claim contrary to the rule in *Codrington*, we also find that the Superior Court did not abuse its discretion in denying Heyliger's motion after conducting such a hearing. At the hearing, Heyliger contends that he did not receive certain critical forensic and autopsy reports. Upon a review of the record, the judge found that the report Heyliger claimed not to have received was made available to his counsel. Further examination by the judge revealed that Heyliger's counsel made a copy of the file he had for Heyliger and gave it to him. Accordingly, the judge found that discovery items were made available to the defense counsel and that the items complained about were received by Heyliger.

Heyliger also argues that his attorney violated the attorney client privilege when he brought his son with him to the Virgin Islands Bureau of Correction ("VIBOC") to interview him. Heyliger's counsel explained to the judge that he brought his son to the VIBOC on two occasions to assist him with operating the electronic discovery and to troubleshoot any potential technical problems in using the computer equipment. In addition to finding Heyliger's counsel's explanation reasonable, the judge found Heyliger did not demonstrate that any such discussions conducted between counsel and Heyliger on those occasions were revealed in any respect to other persons in violation of the attorney client privilege and that Heyliger had ample opportunity to privately discuss matters with his attorney.

Lastly, the Superior Court judge also addressed the issue of defense counsel preparation in consideration of Heyliger's claim that he is ineffective and unprepared. The judge assessed the charges against Heyliger and based on a complete review of the court's file concluded that Heyliger's counsel was "zealous in his representation of Mr. Heyliger." (J.A. 1502). To support this conclusion, the judge cited extensively from the pretrial record, noting that Heyliger's counsel filed several motions including a motion to suppress, a motion for enlargement of time and a discovery motion. The court also noted that Heyliger's counsel submitted a subpoena for a specific witness to be at the suppression hearing and represented Heyliger at the May 13, 2013 suppression hearing. On the issue of whether Heyliger's counsel was unprepared to represent Heyliger, the Superior Court judge found that counsel "zealously and ably represented the defendant in attempting to suppress statements and presented evidence by way of an exhibit, the statement of the person counsel had twice attempted to subpoena for that hearing when the individual did not appear[.]" (J.A. at 1503).

Based on Heyliger's attorney's presentation of motions and requests on his behalf, the Superior Court concluded that Heyliger's counsel's representation and performance did not fall below an objective standard of reasonableness. We conclude that the judge's inquiry was sufficient to support that conclusion, which is fully supported by the record. Accordingly, we further conclude that the Superior Court judge did not abuse his discretion in denying Heyliger's pretrial request to appoint new counsel.

## V. CONCLUSION

■ Although the drafters of 14 V.I.C. § 922(a)(2) were less than precise when they failed to include the optional serial comma between "assault in the third degree" and "and larceny" the statute is nevertheless clear and unambiguous that first-degree felony murder can be predicated solely upon assault in the third degree, which is one of the enumerated felonies in the statute. Additionally, there is sufficient evidence to support Heyliger's conviction for first-degree felony murder predicated upon assault in the third degree, when viewed in the light most favorable to the People. Moreover, the Superior Court did not violate the rule in *Codrington* because it held a hearing and conducted an inquiry sufficient to determine the truth and scope of Heyliger's pretrial claim of ineffective assistance of counsel finding that Heyliger's counsel's performance did not fall below an objective standard of reasonableness and that Heyliger failed to prove that but for his counsel's unprofessional errors, the results of the proceedings would have been different. Accordingly, we affirm the Superior Court's January 21, 2014 judgment and commitment.